A. BAUMBACH v. THE GULF, COLORADO & SANTA FE
RAILWAY COMPANY.

No. 341.

1. **Damages for Delay in Delivering Freight.** —Plaintiff had a carload of lumber on one of defendant's cars which, by agreement, was to be delivered at a point on its track about a mile distant, where defendant was building a house. The lumber was not delivered there until about a month and a half later, when plaintiff refused to receive it, having in the meantime purchased lumber to supply his needs. He sued for the value of the lumber. It is well settled, that mere delay, however unreasonable, on the part of the carrier in delivery of the goods, does not amount to a conversion; the consignee must receive it when tendered, so long as it retains its identity and is not rendered wholly valueless. He should have accepted it and held defendant liable for the actual damages which he had sustained.

2. **Storage and Demurrage Charges.** — Defendant claimed $200 for storage due, which was more than the value of the lumber. The rules of defendant provided that storage would be charged for cars if not unloaded within twenty-four hours after notice of arrival, for first day $1, second $2.50, third and succeeding days $5 per day: and plaintiff was notified that unless he received the lumber it would be stored for his account. The decisions which hold that a carrier which delivers to the consignee a loaded car, to be unloaded by him, may charge reasonable demurrage, fixed by regulation and brought to the notice of the freighter, relate to ordinary cases, when the carrier discharges its duty and delivers the car within the proper time, and by the consignee's delay in unloading is deprived of the use of the car; but while the plaintiff refused to receive the car. he did not adopt by agreement a rate of demurrage fixed by a rule of which he is not shown to have had notice, and which seems to apply to a different state of facts; and there being no evidence that the charges were reasonable, the court could well conclude that the amount claimed was unreasonable.

APPEAL from Harris.   Tried below before Hon. W. C. ANDERS, County Judge.

W. B. Munson, for appellant.—1. It was the duty of the defendant to deliver the lumber within a reasonable length of time after receiving the same.   The defendant's delay, for more than six weeks, in the delivery of the lumber, is an unreasonable delay, when the point of delivery is not further than one mile from the place where the lumber is received for shipment.

2. The court erred·in not finding that the measure of damage to which plaintiff is entitled by reason of the defendant's breach of contract to deliver, is what plaintiff was cost in supplying the place and purpose of the delayed material, the same being intended for a special purpose, and not for market or sale, and having no rental value.

3. Where the defendant, at the time of receiving the lumber for shipment, is notified that the freight is intended for a special purpose, and not for market, if there be no express understanding as to the time of

delivery, the implied agreement of the defendant is that the freight will be delivered in time to serve the purpose for which it is intended; and if the freight is not delivered within a reasonable length of time, and the owner (the plaintiff), after waiting a reasonable length of time, is compelled to purchase other material, he may refuse to receive such delayed freight, and recover as damages of the defendant what the material purchased to supply the place of the delayed material cost him, together with all freight charges paid on such delayed material.   2 Willson's C. C., secs. 631, 637; 1 W. & W. C. C., sec. 206; 3 Willson's C. C., 1, 2.

*J. W. Terry* and *Charles K. Lee*, for appellee.—1. Where freight is delayed in transportation, although the delay may be unreasonable, the consignee is not entitled to refuse to receive the shipment, but should receive the same, and make claim or sue for whatever damages he has sustained by the delay.   Hutch. on Carr., secs. 770d, 775; Railway v. Booton, 4 Willson's C. C., sec. 104; Railway v. Jackson, 4 Willson's C. C., sec. 48; Railway v. Jessee, 2 Willson's C. C., secs. 403, 404.

2. Where freight is intended for a specific use or purpose, and special damages followed by reason of failure to deliver promptly, no recovery can be had of such special damages, unless knowledge is brought home to the carrier at the time and place of shipment of the special necessity for prompt delivery and of the special damages likely to accrue.   Hutch. on Carr., secs. 771–776; Railway v. Jessee, 2 Willson's C. C., secs. 403, 404; Railway v. Cole, 16 S. W. Rep., 176; Railway v. Maetze, 2 Willson's C. C., secs. 631, 632; Railway v. Watson, 1 W. & W. C. C., sec. 813.

3. A railway company has the right to fix reasonable storage and demurrage charges, and tax the same against shippers who fail or refuse to promptly remove freight on arrival at destination, either from its warehouses or from its cars.   There is nothing in the evidence to show that the charges fixed by the defendant were unreasonable, and judgment should have been rendered in its favor for the amount of the same, as shown by the evidence.   Miller v. Banking Co., 15 S. E. Rep., 314; Manfg. Co. v. Railway, 11 Ry. and Corp. Law Jour., 49; Miller v. Mansfield, 112 Mass., 260; 2 Redf. on Rys., 6 ed., 216; Crommelin v. Railway, 10 Bosw., 77.

WILLIAMS, ASSOCIATE JUSTICE.—Both parties have appealed from the judgment below, and both have assigned errors.

The action was brought by Baumbach, to recover of the railway company damages for delay in delivering a carload of lumber.   The damages claimed were the value of the lumber and freight and trackage charges paid upon it.   The defendant pleaded in reconvention for storage or demurrage upon the lumber.

Plaintiff had a load of lumber upon one of defendant's cars at its

freight depot at Galveston, where it had arrived from Lake Charles, Louisiana. Plaintiff paid the freight charges upon it from Lake Charles to Galveston, and arranged with defendant to carry the car to a point upon its track opposite the place where he was engaged in building, about a mile distant from the freight depot. This was on the 22nd of September, 1890. The car, with the lumber, was not carried to the designated point until the 10th of November, the delay being caused by a confusion of the number of the car with that of another. In the meantime plaintiff, needing this lumber for a particular part of the work he was doing, and having inquired of defendant about the car in question, and getting no satisfaction, bought and used other lumber. When the carload in question arrived and was tendered to him, he declined to receive it, on the ground that he had no use for it, having supplied its place and completed the part of the building upon which it was intended to be used. Defendant left the car, with the lumber, on its track at the point to which it had been taken until January 9, 1891. It was then taken to defendant's yard, and remained loaded with the lumber until March 17, 1891, when the lumber was put in defendant's warehouse; and in September following it was put in charge of a warehouse man at plaintiff's charge. Plaintiff was several times notified that unless he received the lumber it would be stored for his account. One of the notices was dated April 4, the dates of others not being given. Plaintiff replied to the notices, that the lumber was at the disposal of defendant.

The rules of defendant provided, that demurrage or storage would be charged for cars if not unloaded within twenty-four hours after notice of arrival; for first day, $1; for second day, $2.50; for third and succeeding days, $5 per day. There was no evidence as to whether the rate charged was reasonable or not, nor was it shown that plaintiff had notice of the regulation.

The only damage claimed by plaintiff (and there was evidence of no other) was the total value of the lumber. It is well settled that the mere delay, however unreasonable, on the part of the carrier in delivering goods does not amount to a conversion. The title of the property remains in the consignee, and he must receive it when tendered, so long as it retains its identity and is not rendered wholly valueless. That the value of the lumber here was wholly destroyed can not be admitted. Plaintiff had no use for it, but it still had a market value. He should have accepted it and held defendant liable for the actual damages which he had sustained. What the measure would have been we are not called upon to say. Nothing was claimed but the value of the lumber, and the assignments of error only complain of the refusal of the court to allow that. Hutch. on Carr., 775.

The court is also of opinion that there was no error in the refusal of the trial court, under the facts of this case, to allow judgment for de-

fendant for the amount claimed for storage or demurrage.    There was no evidence that the charges made were reasonable; and in view of the fact that the sum charged for storage due to defendant alone, leaving out of view that which may have accrued to the other warehousemen, amounted to $200, very considerably more than the value of the lumber, the court could well conclude that it was unreasonable; and there was nothing to show what sum would have been proper compensation.

It is true that some authorities hold, that a railway company which delivers to the consignee a car loaded with freight to be unloaded by the consignee, may charge reasonable demurrage, fixed by regulation and brought to the notice of the freighter.    Miller v. Mansfield, 112 Mass., 260.    In the latter case it is said that the parties contract with reference to the rule, and that the rate fixed by such rule is adopted by their contract.

These decisions relate to ordinary cases, where the carrier discharges its duty and delivers the car within the proper time, and the consignee, by delay in unloading it, deprives the owner of the car of its use.    Here the lumber was not delivered according to the contract, and for that reason the plaintiff refused to receive it when tendered.    While he had no right to do so, we do not think it can be said he adopted by agreement a rate of demurrage fixed by a rule of which he is not shown to have had notice, and which seems to apply to a different state of facts.

The judgment is affirmed.

*Affirmed.*