103  325
e130 262

# W. H. HAMILTON, Appellant, v. THE CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY.

**Carriers:** CONVERSION: *Tender.* A shipper who, after a wrongful delivery of the goods by the carrier to a third person, agrees to wait for a delivery of the goods until the return of the station agent, may treat the goods as converted and maintain an action for their value, where the carrier fails for seven days after the return of the agent to recover and deliver the goods, and a tender made thereafter, and after notice to the carrier of the shipper's election to treat the goods as converted, is too late.

**Attachment:** WHAT MAY BE SEIZED: *Converted property.* Where a common carrier fails and refuses to deliver to the consignee property shipped over its line, the consignee has a right to elect to claim damages for the value of the property, and to waive all title to it; and, after the carrier has been notified of such election, the property belongs to it, and is not subject to attachment in its hands as being the property of the consignee.

**Evidence.** Evidence that the cashier of a station agent is liable for losses resulting from a wrong delivery of shipments by him, and is under bond to secure that delivery, is inadmissible in an action against the carrier for the conversion of the shipment, for the purpose of affecting defendant's liability, but may be admissible to show the interest of the cashier as a witness, and if introduced should be limited to that purpose by an instruction to the jury.

*Appeal from Cedar Rapids Superior Court.—*HON. T. M. GIBERSON, Judge.

TUESDAY, OCTOBER 19, 1897.

PLAINTIFF states, in his petition filed September 24, 1895, his cause of action, in substance, as follows: That on August 31, 1895, the defendant, a common carrier, received from C. H. Stone, for carriage from Strawberry Point to Cedar Rapids, Iowa, "one box containing one Bohemian wheel of fortune, one box containing fixtures for said wheel, one roll of canvas," of which said Stone was the owner, and it was consigned to him; that said

goods were on that day transported to Cedar Rapids, and on that day defendant, without authority or consent of said Stone, delivered said articles to one B. B. Hewitt; that Stone thereafter demanded said goods; that defendant refused to deliver the same; and that they were of the value of three hundred dollars. Plaintiff alleges that for valuable consideration said Stone did, on the twenty-fifth of September, 1895, assign said claim in writing to the plaintiff, which writing is set out, and that the claim is due and owing to plaintiff; wherefore he asks judgment for three hundred dollars and costs. The defendant answered, admitting that it is a common carrier; that the goods were shipped, consigned, transported, and delivered to Hewitt as alleged, except the roll of canvas, which it alleges was delivered to one Hawkins, on a written order of Stone. This allegation is not disputed, and therefore the canvas will not be considered in what is hereafter said. The defendant denies that the goods were of the value of three hundred dollars, and avers that they were of no value, and denies that it is indebted to the plaintiff in any sum whatever, and for want of information and belief denies the assignment of the claim to plaintiff. As further defense, the defendant avers, in substance, as follows: That Hewitt was entitled to the delivery of said articles, for the reason that he was the owner thereof, and that he represented to defendant that he was authorized by Stone, as consignee, to receive and take charge of said property. That on October 8, 1895, defendant, being in possession of said property, tendered the same to the plaintiff by tender in writing, as set out, together with all costs of suit; and that plaintiff made no complaint as to the condition of the property, or the amount of costs, or form of tender, but refused to receive said property and costs. That it is now unable to produce said boxes of freight in court, for the reason that the

same were taken from its possession upon writs of attachment against the property of C. H. Stone, of which fact defendant notified plaintiff in writing on October 28, 1895, which notice is set out. "Defendant avers that the said property were and are implements of gaming, and contraband articles, and of no value whatever; and alleges the same to have been used by C. H. Stone and others in Iowa, in violation of the laws of said state, for gambling and gaming purposes, and that said property was shipped to Cedar Rapids for such use." Plaintiff filed his motion in fourteen paragraphs to divide the answer into counts, to require more specific statement in certain particulars, and to strike out parts of the answer. The motion was sustained so far as to require the defendant to separate its answer into counts, and to strike the division of the answer quoted above. It was overruled as to the other grounds of the motion. Thereupon plaintiff demurred to the second division of the answer, on the ground that the facts stated therein, if true, do not constitute a defense. This division is the one wherein defendant alleges the delivery to Hewitt. The demurrer was overruled, and thereafter the defendant amended its answer by alleging, in substance, as follows: (1) That the property was delivered to Hewitt by mistake, innocently made, and with no intention to deprive the consignee of his property. (2) That, upon being informed by the consignee that the property belonged to him, defendant promptly informed him that they would procure the property immediately, and deliver same to him; and that they at no time disputed his right to the possession thereof. (3) That it was then agreed between defendant and Stone that Stone would accept the property when the defendant would procure the return thereof from Hewitt, and deliver it to him. That thereupon defendant diligently set about to procure the return of the property, and did

procure the same in good condition, and tendered the same to the plaintiff, and he refused to receive the same as such, in the answer now on file. Plaintiff moved to strike from this amendment paragraphs 2 and 3 as incompetent, irrelevant, and immaterial, which motion was overruled. On March 20, 1896, the case was tried to a jury, and verdict and judgment rendered in favor of the defendant. Plaintiff appeals.—*Reversed.*

*Rickel & Crocker* and *John A. Reed* for appellant.

*Rothrock & Grimm* and *J. C. Cook* for appellee.

GIVEN, J.—I. The material questions raised by plaintiff's motions and demurrer that were overruled were again raised and preserved on the trial. The motions are long and complicated, and we will not attempt to state them or the demurrer more in detail, but proceed to consider these questions argued, after first noticing the material facts in the case. There is no dispute but that Stone did ship the goods of which he was owner, and that they were transported to Cedar Rapids, were wrongly delivered to Hawkins without authority, and that, upon Stone's thereafter applying for the goods, the defendant was then unable to and did not deliver them to him. There is a dispute as to what understanding or agreement was then entered into between Stone and the defendant's agent, Jacobs, with respect to the delivery of the goods at a future time. Stone admits that he then consented to wait for the goods for two or three days, while Jacobs says that he agreed to wait until the defendant's station agent, Mr. Bates, who was then absent, would return. Soon after this first interview, and before the return of Bates, Stone and his attorney again demanded the delivery of the property, and they say that Jacobs refused to deliver it then or thereafter, and told them to

hunt it themselves, or go ahead and sue. Jacobs denies that he refused to thereafter deliver the wheel, or that he told them to hunt it themselves, or to go ahead and sue. He says he never disputed Stone's right to the property, nor refused to get it, and deliver it to him. "I always promised to get his wheel, and, furthermore, he always promised to wait on me." Mr. Bates returned September 14, and this action was commenced on the twenty-fourth, Stone having assigned the claim for damages to the plaintiff by written assignment dated September 21, 1895. The validity of this assignment is put in issue, but there is no evidence upon which to question its validity. The defendant having regained possession of the wheel and fixtures, caused to be served on the plaintiff, on October 8, 1895, a tender in writing as follows: "You are hereby notified that the defendant in the above entitled cause hereby tenders you in court two boxes of freight, one of which contains a Bohemian fortune wheel, and the other the fixtures for the said wheel; together with all costs of suit. These boxes of freight are the ones in suit, and claimed by you in the above entitled cause, as set out in your petition herein." On October 12, 1895, one Menear commenced an action before a justice of the peace, aided by attachment against Stone, in which an attachment was issued, and under which the wheel and fixtures in question were on that day taken from the possession of the defendant, and afterwards sold on execution in that case. On October 28, 1895, the defendant caused written notice of said seizure to be served on the plaintiff.

II. It cannot be disputed that, if the defendant failed to deliver the property to Stone within the time in which it was entitled to deliver it, and within which Stone was bound to receive it, the defendant is liable for its value as for a conversion. Mr. Bates returned on September 14, 1895. Let it be conceded that Stone did extend the time for delivery until

Mr. Bates' return, we have seen that nothing was done by the defendant towards delivering the property until the tender made October 8 following. Surely, this was not an offer to deliver upon Mr. Bates' return, nor within a reasonable time thereafter. It appears by the assignment from Stone to the plaintiff that on September 21, 1895, they had elected to make the claim for damages instead of the property, of which the defendant had notice by this petition filed September 24. Surely, the time that elapsed between Mr. Bates' return on the fourteenth and the making of this assignment on the twenty-first was a sufficient time in which to have returned the property; and, the defendant having failed to return it within that reasonable time, Stone and the plaintiff had a right to thereafter treat it as converted, and to claim its value in damages. A tender of the property, to be effectual, must have been made within the time in which the defendant was entitled to deliver it and the plaintiff bound to receive it. The tender made was not until long after the lapse of this period, and, not being accepted, is no bar to plaintiff's right to recover. The defense pleaded, that the property was a gaming implement, and used for gambling, was stricken out on plaintiff's motion; and, defendant not having appealed, we are not called upon to consider the correctness of the ruling on that motion.

III. The remaining question is whether the defendant should be exempt from liability because of the seizure of the property under a writ of attachment. The attachment was not levied until October 12, 1895, long after the time within which the defendant was entitled to deliver the property, and long after it had been notified that Stone and the plaintiff elected to claim damages, and were claiming damages in this action. Under this condition of things it cannot be doubted that the defendant was entitled

to hold this property as against the attachment. By the election of Stone and the plaintiff to claim damages, as they had a right to do, they waived all claim to the property, and it thereafter became the property of the defendant, and therefore not subject to attachment as the property of Stone. This being true, it is no defense to this action that the property was taken under an attachment when it was.

IV. Mr. Jacobs was permitted to testify, over plaintiff's objection to this effect: That he was employed by Mr. Bates, the station agent at Cedar Rapids, as his cashier; that he was paid by and acted as agent of the defendant; that under his employment he was liable to Mr. Bates for losses resulting from a wrong delivery of shipments; and that he had given to Mr. Bates a bond to secure him on that liability. This evidence was clearly inadmissible for the purpose of affecting defendant's liability, as the fact that the loss might ultimately fall upon Mr. Jacobs is no defense. While this evidence was clearly immaterial and inadmissible as affecting defendant's liability, we think it was admissible as showing the interest of the witness Mr. Jacobs, but the jury should have been plainly instructed to that effect. For the reasons already stated, we think the court erred in overruling plaintiff's motion to strike, and in the giving and refusing of instructions with reference to the questions which we have considered. The judgment of the district court is therefore REVERSED.