BURTON CLARK, Appellant, v. THE AMERICAN EXPRESS Co., Appellee.

**Appeal:** RECORD: EVIDENCE. Where only part of a stipulation of facts was introduced by plaintiff, and defendant offered no evidence but obtained a directed verdict at the close of plaintiff's case, only that part of the stipulation offered in evidence should be included in the record on appeal.

**Carriers:** TREBLE DAMAGES: PLEADING. A petition which fails to allege a combination or agreement to prevent a continuous carriage of goods, or that the company failed to furnish "reasonable, proper and equal facilities" for the transportation of goods, will not support a recovery of treble damages under Code Sections 2129, 2125 and 2130.

**Delay in delivery:** DAMAGES. The measure in damages for a carriers negligent delay in delivering goods, is the difference between the market value at the time when they should have been delivered and the value at the time actually ready for delivery: and when there is no appreciable difference in value only nominal damages can be awarded.

**Same:** DUTY OF OWNER. Where the owner of goods, which are delayed in their shipment, is notified of their subsequent arrival, he cannot thereafter refuse to accept the same or to give any direction with respect thereto, for the purpose of increasing his damages caused by the delay.

**Delay in delivery:** DAMAGES: CONVERSION: DUTY OF OWNER. A carrier of goods agreeing to deliver the same within a specified time is an insurer of delivery, simply, as agreed, and is liable for consequential damages in failing to do so; but such failure does not amount to a conversion nor relieve the owner of his duty to receive the goods after the agreed time.

**Nominal damages.** Where the shipper of goods failed to show any loss of profits in the sale by reason of the carriers failure to deliver the same as agreed, or any deterioration in value until after such time as the shipper should have accepted a return thereof, he was only entiled to nominal damages for the carriers failure to deliver them as agreed.

**Conversion.** A carrier of goods, who failed to deliver the same at the time agreed upon, cannot be held for conversion until after a demand or actual conversion; and demand and refusal on the day of the agreed delivery would not necessarily amount to conversion.

*Appeal from Delaware District Court.*— HON. FRANKLIN C. PLATT, Judge.

TUESDAY, MARCH 13, 1906.

ACTION to recover the value of certain goods delivered to the defendant at Manchester, Iowa, for shipment to Colesburg or Osterdock, in the same State. Trial to a jury, directed verdict for defendant. and plaintiff appeals.— *Affirmed.*

*Fred B. Blair* and *Bronson, Carr & Sons,* for appellant.

*Dunham, Norris & Stiles,* for appellee.

DEEMER, J.— Plaintiff's petition is in two counts. In the first he alleges that defendant undertook to convey five cloaks which plaintiff's agent at Colesburg had sold for him, from Manchester, Iowa, to Colesburg, so as to reach plaintiff's agent the following morning, to wit, October 31, 1903; that defendant disregarded its contract, and did not deliver the same as agreed, as it could have done in the reasonable course of its business; that it received the goods from plaintiff at 5:05 p. m. October 30th, and that the car of a connecting carrier which operated its line through Colesburg did not leave Dubuque, Iowa, the place of transfer until 7:20 a. m. of the following day, being the only car which would carry the goods that day or until the following

Monday. That defendant negligently, and in disregard of its contract, failed to deliver the goods to the connecting carrier before 7:20 a. m. the next morning after receiving them, and failed and neglected to deliver the same to plaintiff's agent at Colesburg, whereby plaintiff lost the sale of the cloaks, and was damaged to the amount of $64.50. It is further alleged that defendant's act was unlawful under section 2129 of the Code of Iowa, in that it purposely avoided continuous passage of the goods, and plaintiff asked judgment for three times the amount of damages sustained.

The second count is for a conversion of the goods due as is alleged to the fact that defendant received the goods and failed to deliver them to plaintiff's agent or to return the same to plaintiff, but retained and kept them in its possession; that part of the first count of the petition asking treble damages was stricken on motion of defendant.

In an amendment to the petition it is alleged that defendant undertook to convey the goods from Manchester to Osterdock, Iowa. Defendant denied that it undertook to transport the goods from Manchester to Colesburg, alleged that it had no agent at that place, and that no connecting carrier had any agent there, all of which plaintiff well knew; admitted that it received the goods at Manchester for transportation by it to Dubuque and by the United States Express Company, a connecting carrier to Osterdock, Iowa; said that it promptly performed its part of the contract and delivered the goods without unreasonable delay to the United States Express 'Company, at Dubuque, and that the goods were transported to Osterdock by the latter company, without unreasonable delay, reaching the latter place on Monday November 2, 1903; that plaintiff refused to receive the package either at Manchester or at Osterdock, and still refuses though often requested to do so. It denied that its agent undertook to deliver the goods on the morning of October 31st; and further pleaded that such agent had no authority to contract to deliver goods at Colesburg

at any specified time.   Upon these issues the case went to
trial with the result above stated.

There is a controversy over the record in the case, and
a motion has been made to strike appellee's amended ab-
stract, which sets forth a certain stipulation of facts said
to have been made by the parties.   As but part
of this stipulation was offered in evidence by
plaintiff, and as defendant offered no testi-
mony but contented itself with a motion to direct a verdict
after plaintiff closed his case, we do not think this stipu-
lation in the form in which it appears should be considered
further than as to the parts thereof introduced in evidence
by plaintiff, and plaintiff's motion to strike the amended
abstract must be and it is sustained, the costs thereof to be
taxed to appellee.

*1. APPEAL: record: evidence.*

The first ruling made by the trial court, which is chal-
lenged was upon the motion to strike parts of the petition.
While there is some confusion in the record regarding the
nature of this motion, due to certain amend-
ments to the abstract which are scarcely in-
telligible, the point argued seems to be that
the court erred in holding that an action for treble dam-
ages would not lie under the facts stated.   Code, section
2130, authorizes treble damages for violation of the chapter
of the Code in which is found sections 2125 and 2129.
Section 2129, in substance, forbids any combination, con-
tract, or agreement to prevent the carriage of freights from
being continuous from place of shipment to place of desti-
nation.   The claim made in the petition is that the acts
charged against defendant were unlawful, in that defendant
was purposely avoiding continuous passage of the goods re-
ceived by it.   No contract, combination, or agreement to
prevent continuous carriage is charged, even by inference,
and the motion to strike was properly sustained.

*2. CARRIERS: treble dam-ages: pleading.*

But it is contended, and apparently for the first time
in this court that under sections 2125 and 2130 plaintiff

was entitled to treble damages. We might well refuse to consider that question, but, as the case is argued as if it were involved, brief reference will be made thereto. Section 2125 requires common carriers "according to their respective powers" to afford "all reasonable, proper, and equal facilities" for the interchange of traffic between their respective lines; and for the receiving, forwarding, and delivering of property to and from their several lines, and to and from other lines and places connected therewith. There is no allegation in the petition charging that defendant did not provide proper facilities for the interchange of traffic between it and the connecting carrier, or for the forwarding of property to other lines and places connected therewith. The only charge in this respect is negligence and breach · of contract in failing to deliver the goods to the connecting carrier, and failure and neglect to deliver to plaintiff's agent at Osterdock or Colesburg as agreed. There being no allegation in the petition of failure to furnish "reasonable proper and equal facilities" or of "any combination contract or agreement to prevent continuous carriage" the motion to strike was properly sustained.

The sections of the Code relied upon are penal in character, and must be strictly construed. The case must be brought within the letter of the law, and nothing should be left to inference or intendment. *Bond v. Wabash Co.,* 67 Iowa, 712; *Hanks v. Brown,* 79 Iowa, 560.

II. Reduced to its last analysis, plaintiff's case is bottomed upon two theories: First, negligence and breach of contract in failing to deliver the goods within the time specified; and, Second, an alleged conversion of the goods due to defendant's failure to transport them as agreed, and to return the same to the plaintiff. Assuming, for the purposes of the case, that negligence on the part of the defendant is shown, plaintiff was only entitled to recover the difference between the market value of the goods at the time when they should

3. DELAY IN
DELIVERY:
damages.

have been delivered, and the value thereof when they actually arrived and were ready for delivery.   Now the evidence shows beyond all controversy that there was no difference in the value of the goods on October 31st, when it is claimed the goods should have been delivered, and November 2d, when they were actually received at Osterdock or Colesburg, and were ready for delivery to plaintiff's agent. Hence nothing more than nominal damages could have been awarded on account of defendant's negligence.   *Hudson v. R. R.,* 92 Iowa, 239; *Rice v. Whitley,* 115 Iowa, 748.

But it is said, defendant did not offer to deliver the goods to plaintiff until something like three months after they should have been delivered, and that when delivery was offered the goods were not worth to exceed $15. The package was consigned to W. H. Bristol, he being plaintiff's agent at Osterdock, and this agent was instructed by plaintiff not to receive or accept the goods after October 31st.   He was expressly directed not to receive them on November 2d.   Chapman, plaintiff's agent at Colesburg, was notified of the arrival of the goods at Osterdock, November 2d.   About 10 days after November 2d, defendant's agent called upon plaintiff, and stated that he (plaintiff) could have the goods " deadheaded " back if he desired.   Plaintiff avoided making an answer one way or the other.   All he said was, that if they came back " they would have to be deadheaded."

4. SAME:
   duty of
   owner.

In these circumstances it is apparent that plaintiff could not remain silent and refuse to accept the goods even if there was negligence in their transportation.   It is true that the consignee inquired for the goods of the agent at Osterdock on October 31st, and was informed that they had not arrived.   But it is conceded that they did arrive on November 2d, and that plaintiff's agent had notice thereof. Bristol, the consignee, was instructed not to accept them on that day; and within 10 days defendant inquired of plaintiff as to what should be done with the goods, receiving an

evasive reply. Surely plaintiff was not justified under these circumstances in remaining dumb and in awaiting an actual tender of the goods; thus by his own neglect or indifference increasing his damages.

III. Going now to the alleged breach of contract in failing to deliver the goods on October 31st as agreed. There was evidence to show that plaintiff made a special

5. DELAY IN DELIVERY: damages: conversion: duty of owner.

contract or arrangement with defendant's agent at Manchester, for the delivery of the goods by a connecting carrier, at Osterdock on October 31st; and that the goods did not in fact reach that place until November 2d. Plaintiff knew in a few days, and his agent knew at once, that the goods did not reach their destination until November 2d; and plaintiff's agent, the consignee of the goods, was notified not to accept them at that time.

Conceding, arguendo, that defendant's agent had authority to make such a contract, the legal effect thereof was to make the carrier an insurer and not a purchaser of the goods. As such insurer it could not rely upon any negligence of the connecting carrier, or upon any unforeseen event in excuse of the performance of its contract; and knowing of the purpose of the shipment it might be and doubtless was liable for any consequential damages arising from plaintiff's inability to sell the goods, or for loss of profit in their sale.

But failure to deliver as agreed did not amount to a conversion of the goods; nor did it relieve plaintiff from his duty to accept them from the carrier, even though there was delay in their shipment. *Cleveland R. R. v. Heath,* 22 Ind. App. 47 (53 N. E. 198); *Adams Co. v. Darnell,* 31 Ind. 20 (99 Am. Dec. 582); *Fox v. R. R.,* 148 Mass. 220 (19 N. E. 222, 1 L. R. A. 702); *Pereira v. R. R.,* 66 Cal. 92 (4 Pac. 988); *Spalding v. R. R.,* 101 Mo. App. 225 (73 S. W. 274); *Scovill v. Griffith,* 12 N. Y. 509; *Baumbach v. R. R.,* 4 Tex. Civ. App. 650 (23 S. W. 693);

*Beedy v. Pacey,* 22 Wash. 94 (60 Pac. 56). Even though there was a breach of contract obligations, it was plaintiff's duty to accept the goods when received. For any damages growing out of this breach of contract he is entitled to recover, but not for the full value of the goods, unless they were totally destroyed or actually converted by the defendant. See cases hitherto cited, and *Bridgman v. The Steamboat Emily,* 18 Iowa, 509.

. Plaintiff did not show any loss of profits in the sale of the goods for which he had a customer; nor did he show any deterioration in their value until some time between the 1st and the 10th days of December. His estimate of deterioration was fixed with reference to February 1st, of the next year, when the goods were actually tendered to him at Manchester. His own testimony showed no deterioration until after the 1st or 10th of December. Taking into account all the testimony with reference to the delivery of the goods and the consequent damages resulting from failure to transport as agreed, it is clear plaintiff has not shown himself entitled to more than nominal damages; and for failure to allow these, we do not ordinarily reverse a case.

6. NOMINAL DAMAGES.

IV. As to the alleged conversation. Defendant came into the possession of the goods as bailee rightfully. It has never in fact converted them to its own use; but has held them for the benefit of plaintiff down to the very time of trial. It is true that plaintiff made demand for them of the connecting carrier on October 31st, and was informed that they had not arrived. Both plaintiff and his agent were informed of their arrival on November 2d; but plaintiff had instructed his agent not to receive them. Defendant undertook to trace the goods, and on November 12th, informed plaintiff that they would be returned to him " deadhead " if he desired. Plaintiff's response to this we have already given. The goods were again offered plaintiff on the last of January or the first

7. CONVERSION.

of February, and he refused to accept them.  Plaintiff never made any demand of the defendant company for the goods, nor did he make any demand of the connecting carrier, unless the inquiry made for the goods on October 31st, constituted a demand.

As defendant was rightfully in possession, no conversion took place in the absence of some proof of actual conversion, until demand was made; and demand made on the day agreed upon for delivery even if that were found, would not necessarily amount to a conversion.  If failure to deliver when demanded was due to negligence alone, this would not in itself constitute a conversion of the goods. See cases hitherto cited.  There was no proof of actual conversion to defendant's use and benefit — indeed the testimony distinctly negatives this thought; and if there was any conversion, it was due to defendant's failure to deliver the goods at Osterdock within the time agreed.  This, as we have said, does not in itself amount to a conversion. In *Hamilton v. R. R.,* 103 Iowa, 325, relied upon by appellant, there was an actual conversion of the goods through delivery by the carrier to a stranger, which, of course, made the carrier responsible for the value of the goods.  The promise to return in that case was in lieu of a claim for the value of the goods, and if not carried out within a reasonable time, could not be relied upon by the carrier in exoneration of liability.  None of the other cases cited by appellant's counsel are in point on this proposition.  Under the conceded facts defendant tendered the goods to plaintiff before this action was commenced, and plaintiff refused to receive them.  His action, then, was not for conversion, but for damages.  *Fisher v. Brown,* 104 Mass. 259 (6 Am. Rep. 235), really sustains defendant, in that it holds a tender sufficient without the actual production of the goods, where the party entitled to receive them does not demand their actual production.

From this review of the propositions relied upon by

appellant, it is manifest that, under the testimony, he was entitled to no more than nominal damages; and. that the trial court did not err in directing a verdict for defendant. If there be error, it was not such as to demand a reversal.

The judgment is therefore *affirmed.*