PEOPLE ex rel. FERGUSON v. REARDON, Peace Officer.

(Supreme Court, Appellate Division, First Department. March 20, 1908.)

1. WITNESSES—PRIVILEGES OF—CRIMINAL PROSECUTIONS—COMPELLING ACCUSED TO TESTIFY AGAINST HIMSELF—STATUTORY PROVISIONS.

Section 321 of the tax law (Laws 1905, p. 477, c. 241) requires every person, firm, or corporation engaged in buying and selling stocks to keep books in which shall be recorded the date of making each transaction relating to any stock, the number of shares affected, and the total amount covered by each transaction; and it provides that such book may be inspected by the State Comptroller to ascertain whether the tax imposed was paid, which right of examination may be enforced by mandamus. The act also provides that the Comptroller, on finding that any tax has not been paid, shall sue for the penalty incurred, and makes a refusal to permit inspection a misdemeanor, punishable by fine or imprisonment, or both. The sections of the tax law preceding section 321, added thereto by chapter 241, p. 474, Laws 1905, and amended by chapter 414, p. 1008, Laws 1906, provide for the payment of a stamp tax upon all payments or transfers of stock. Section 317 of the tax law (Laws 1905, p. 474, c. 241), as amended by chapter 414, p. 1008, Laws 1906, makes it a misdemeanor punishable by fine or imprisonment, or both, to sell, or transfer or deliver in pursue of such sale, any stock without paying the tax prescribed. *Held,* that section 321 was in violation of article 1, § 6, of the state Constitution, providing that no person shall be compelled in any criminal case to be a witness against himself.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 50, Witnesses, §§ 1009–1014.]

2. SAME—CONSTITUTIONAL IMMUNITY—RIGHT TO BENEFIT OF—FAILURE TO START CRIMINAL PROSECUTION—EFFECT.

The fact that no criminal prosecution has been started against a party whose books a representative of the State Comptroller sought to inspect by virtue of express statutory authority did not affect the right of the person in whose custody the books were to avail himself of the protection of the state Constitution (article 1, § 6) against compelling an accused in a criminal case to be a witness against himself, since the constitutional immunity extends to any preliminary investigation, or even collateral or independent proceedings in which it is sought to elicit evidence which may result in a prosecution.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 50, Witnesses, § 1011.]

3. SAME—EXTENT OF IMMUNITY.

The constitutional inhibition against compelling any person in a criminal case to be a witness against himself extends to all manner of proceedings in which testimony is to be taken, whether litigious or not, and whether ex parte or otherwise.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 50, Witnesses, § 1011.]

4. SAME.

The fact that, without the right of search and inspection of the books of stockbrokers, it will be difficult to discover and punish violations of the acts taxing stock sales, does not render an act authorizing the inspection of such books for the purpose of discovering defaults in payments of taxes valid, where the act is plainly violative of the right of individual immunity from being compelled to give incriminating testimony against one's self.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 50, Witnesses, §§ 1009–1014.]

5. SAME—CONSTITUTIONAL PROVISIONS—CONSTRUCTION.

The provisions of the state and federal Constitutions providing that no person shall be compelled in a criminal case to be a witness against himself should be applied in a broad and liberal spirit, in order to secure to

the citizen that immunity from every species of self-accusation implied in the language in which they are expressed.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 50, Witnesses, §§ 1009–1014, 1026–1037.]

Appeal from Special Term.

Habeas corpus by the people, on the relation of John S. Ferguson, against Edward Reardon, as peace officer of the county of New York, to compel respondent to discharge relator from custody. From an order dismissing the writ and remanding the relator to the custody of the respondent, relator appeals. Reversed, and relator ordered discharged.

Argued before PATTERSON, P. J., and INGRAHAM, McLAUGHLIN, CLARKE, and SCOTT, JJ.

John G. Milburn, for appellant.
Timothy I. Dillon, for respondent.

SCOTT, J. The relator appeals from an order dismissing a writ of habeas corpus and remanding him to the custody of a peace officer. The relator is a stockbroker engaged in the business of buying and selling stocks in the city of New York. On June 17, 1907, one Richard J. Malloy, appeared at relator's office and presented a paper, signed by the State Comptroller, authorizing him (the said Malloy), as a duly authorized representative of said Comptroller, to—

"inspect and examine the books, memoranda, records, and papers of any person, firm, company, association or corporation who has made sale, agreement to sell, delivery, or transfer of shares or certificates of stock, or who is conducting or transacting a brokerage business, to ascertain whether the tax imposed by law has been paid."

Upon the relator's refusal to permit his books and papers to be examined, an information was laid before a city magistrate charging him with a misdemeanor under chapter 241, p. 474, Laws 1905, as amended by chapter 324, p. 582, Laws 1907. The relator was arraigned upon said charge and held to answer, whereupon a writ of habeas corpus was sued out, and, after hearing, dismissed.

By this appeal the relator calls in question the constitutionality and validity of the act under which he was held. The act which the relator is charged with violating is known as section 321 of the tax law, and as it now stands reads as follows:

"Sec. 321. Power of State Comptroller. Every person, firm, company, association or corporation making a sale, agreement to sell, delivery or transfer, of shares or certificates of stock or conducting or transacting a brokerage business shall keep or cause to be kept a just and true book of account wherein shall be plainly and legibly recorded the date of making every sale, agreement to sell, delivery or transfer of shares or certificates of stock, and every transaction in relation to any stock; the number of shares, the total amount covered by each such sale, agreement to sell, delivery, transfer or transaction and the name of the other party thereto, and such book shall at all times be subject to the inspection of the Comptroller or any of his representatives, between the hours of ten o'clock in the forenoon and three o'clock in the afternoon, except on Saturdays, Sundays and legal holidays. The State Comptroller may, at any time after transfers of stock which by the provisions of this article are subject to a state stamp tax, inquire into and ascertain whether the tax imposed by the provisions of this article has been paid. For the purpose

of ascertaining such fact the Comptroller shall have the right and it shall be his duty to examine the books and papers of any person, firm, company, association or corporation, and memoranda of transfers shall remain accessible for such inspection for three months from their respective dates. The State Comptroller may enforce his right to examine the books and papers of any person, firm, company, association or corporation by mandamus. If from such examination the Comptroller ascertains that the tax provided for in this article has not been paid, he shall bring an action in his name as such Comptroller in any court of competent jurisdiction for the recovery of such tax and for any penalty incurred by any person under the provisions of this article. Every person, firm, company, association or corporation who shall refuse to permit the Comptroller or any of his representatives to inspect such books or any memoranda or record relating to such sale, agreement to sell, delivery, or transfer, or transaction at any time as above provided, or who shall fail to keep such book of account, or who shall in any other respect violate any of the provisions of this section shall be deemed guilty of a misdemeanor, and, on conviction thereof, shall for each and every such offense pay a fine of not less than five hundred dollars nor more than five thousand dollars, or be imprisoned not less than three months nor more than two years, or both, at the discretion of the court."

The preceding sections of the tax law, added thereto by chapter 241, p. 474, Laws 1905, and amended by chapter 414, p. 1008, Laws 1906, provide for the payment of a tax upon all sales or transfers of stock, to be paid by affixing stamps to the bill of sale, instrument of transfer or other memorandum or evidence of the sale. Section 317 of the tax law, as amended by chapter 414, p. 1009, Laws 1906, makes it a misdemeanor, punishable by fine or imprisonment, or both, to sell or transfer, or deliver in pursuance of such sale, any stock without paying the tax therefor as prescribed by the act. The purpose of giving the Comptroller authority to examine the books and papers of persons or corporations dealing in stocks is to ascertain whether the tax imposed by the act has been paid, and thus the result of such examination may be to procure evidence to convict the persons whose books and papers are so examined of a crime. At least, whether such be the avowed purpose or not, the evidence obtained by such examination could be used in a prosecution for the crime established by the statute. People v. Adams, 176 N. Y. 357, 68 N. E. 636, 63 L. R. A. 406, 98 Am. St. Rep. 675; s. c. sub nom. Adams v. N. Y., 192 U. S. 585, 24 Sup. Ct. 372, 48 L. Ed. 575.

The bald question, therefore, is (among others suggested and argued) whether the Legislature can compel a citizen, against his will, to submit to a search of his private books and papers in order that evidence may be thereby obtained whereby he may be convicted of a crime or subjected to a penalty. The answer is to be found in section 6 of article 1 of the Constitution of this state which provides that "no person shall be compelled in any criminal case to be a witness against himself," and the noted case of Boyd v. United States, 116 U. S. 616, 6 Sup. Ct. 524, 29 L. Ed. 746, which construed, applied, and vitalized a like provision in the Constitution of the United States. In that case, which arose under a federal revenue act, the United States had instituted a quasi criminal action against Boyd for the forfeiture of certain goods and had recovered judgment. The appeal turned upon the constitutionality of an act of Congress (Act June 22, 1874, c. 391, § 5, 18 Stat. 187 [U. S. Comp. St. 1901, p. 2019]), which did not in

terms require a defendant in such an action to permit his books and papers to be used against himself, although such was the practical effect of the act. It was held by a unanimous court that such an act, even when applied to a civil action involving only forfeiture of goods, was violative of that portion of the fifth amendment of the Constitution of the United States, which provides, in language identical with that used in our state Constitution, that a man may not in a criminal case be compelled to be a witness against himself. If thus objectionable when sought to be applied to a civil action for the forfeiture of goods, such an act is even more clearly objectionable when its purpose is to obtain evidence for use in a criminal proceeding, and it is to be noted that the section of the tax law under which the relator has been held to answer is essentially one providing the penalties to be imposed for failure to pay a tax, and that its validity is not controlled by the same considerations that have led the courts in many jurisdictions to uphold so-called "listing" acts, which require the taxpayer to furnish to the taxing authorities information upon which the amount of the tax to be levied may be determined. In his opinion in the Boyd Case Mr. Justice Bradley dwells at considerable length upon the fourth amendment to the federal Constitution, which forbids unreasonable searches and seizures, and which, as he points out, has been regarded, ever since Lord Camden's memorable judgment in Entick v. Carrington in 1765 (19 Howells, State Trials, 1029), both in England and in this country, as one of the permanent foundations of personal liberty. For some reason this provision has never been incorporated into our state Constitution, although it has, from the beginning, been a part of our statutory law (Rev. St. [1st Ed.] pt. 1, p. 93, c. 4, § 11); and it may therefore be claimed, as it is now by the respondent, that it is not restrictive upon the power of the Legislature. Whether such a claim can be sustained admits of grave doubt; but it requires no consideration here, because, as pointed out in the concurring opinion of Mr. Justice Clifford and the Chief Justice in the Boyd Case, the invalidity of an act requiring any person to furnish evidence to be used against himself in a criminal case is amply established by the fifth amendment of the federal Constitution, the language of which is incorporated into our own Constitution.

It is not of consequence that no criminal prosecution has been set on foot against the relator, for his constitutional immunity extends to any preliminary investigation, or even collateral or independent proceeding, in which it is sought to elicit evidence which may result in prosecution. Counselman v. Hitchcock, 142 U. S. 547, 12 Sup. Ct. 195, 35 L. Ed. 1110; People ex rel. Taylor v. Forbes, 143 N. Y. 219, 38 N. E. 303; People ex rel. Lewisohn v. O'Brien, 176 N. Y. 253, 68 N. E. 353; In re Emery, 107 Mass. 172, 9 Am. Rep. 22. It extends, says Prof. Wigmore, "to all manner of proceedings in which testimony is to be taken, whether litigious or not, and whether ex parte or otherwise." Wigmore on Ev. vol. 3, p. 3105. It is undoubtedly true that without the right of search it will be difficult to discover and punish violations of the act taxing stock sales; but that consideration will not serve to uphold an act plainly violative of the Constitution and of the right of individual liberty and immunity which constitutes

the very corner-stone of our political structure. "It is the duty of the courts to be watchful for the constitutional rights of the citizen, and against any stealthy encroachments thereon. Their motto should be, 'Obsta principiis.'" Boyd v. U. S., supra. "The individual may stand upon his constitutional rights as a citizen. He is entitled to carry on his private business in his own way. His power to contract is unlimited. He owes no duty to the state, or to his neighbors, to divulge his private business or to open his doors to an investigation, so far as it may tend to incriminate him." Hale v. Henkel, 201 U. S. 43, 74, 26 Sup. Ct. 370, 50 L. Ed. 652. It has been said by our own Court of Appeals that, when a proper case arises, the provisions quoted from our own and the federal Constitution "should be applied in a broad and liberal spirit, in order to secure to the citizen that immunity from every species of self-accusation implied in the brief and comprehensive language in which they are expressed." People ex rel. Taylor v. Forbes, supra. We entertain no doubt that the section of the tax law under which it is sought to punish the relator for his refusal to open for examination by the appointee of the State Comptroller all his books, papers, and private memoranda relating to his business violated section 6 of article 1 of the Constitution, and is therefore invalid and insufficient to support a prosecution.

It follows that the order appealed from must be reversed, and the relator discharged from custody.

PATTERSON, P. J., and INGRAHAM and CLARKE, JJ., concur.

McLAUGHLIN, J. (concurring). The Legislature had the power to impose a tax upon the delivery or transfer of shares or certificates of stock. People ex rel. Hatch v. Reardon, 184 N. Y. 431, 77 N. E. 970, 8 L. R. A. (N. S.) 314, 112 Am. St. Rep. 628. Having the power to impose the tax, it could also provide the method of collection (Genet v. City of Brooklyn, 99 N. Y. 296, 1 N. E. 777) ; and, to aid in the collection, it could require that a book or memorandum should be kept by the person making the transfers, which should be open to the inspection of the proper authorities (Boyd v. United States, 116 U. S. 616, 6 Sup. Ct. 524, 29 L. Ed. 746). Nor can the inspection be refused on the ground that it might furnish criminating evidence against the person required to keep the book or memorandum. St. John v. New York, 201 U. S. 633, 26 Sup. Ct. 554, 50 L. Ed. 896. As was said in the Boyd Case:

"The supervision authorized to be exercised by officers of the revenue over the manufacture or custody of excisable articles and the entry thereof in books required by law to be kept for their inspection are necessarily excepted out of the category of unreasonable searches and seizures."

The trouble with the statute, as I read it, is that it goes much further than this. It purports to give the Comptroller and his representatives power to inspect, not only the book or memorandum required by law to be kept, but the books and papers generally of persons liable for the tax. It was the relator's refusal to comply with the demand for leave to inspect all his private books and papers generally for which he was held.

The case, therefore, falls within the principle laid ·down in the Boyd Case, supra, and for that reason I concur in the conclusion reached by Mr. Justice SCOTT.