### 28915. JENKINS *v.* THE STATE.

DECIDED APRIL 30, 1941.

*M. C. Barwick, M. Cook Barwick,* for plaintiff in error.

*W. H. Lanier, solicitor-general, Q. L. Bryant, J. Roy McCracken,* contra.

GARDNER, J. The defendant was indicted for the offense of seduction. When called upon to plead to the indictment he filed a plea in abatement which, on motion of the State, was stricken as insufficient in its allegations of fact, as a matter of law, to authorize the court to set aside the indictment. Exceptions pendente lite were filed. A plea of not guilty was entered, and the defendant was convicted. His motion for new trial was overruled. To this judgment and to the ruling complained of in the exceptions pendente lite he excepted.

The plea in abatement, in its material allegations, set forth: "(1) On June 24th, 1940, the said defendant was called before the grand jury of Jefferson County, Georgia, and was compelled to testify before that body concerning the truth of the accusation charged in the warrant upon which he was arrested. (2) Defendant says that he was forced to testify before the 'true bill' was rendered, and that this testimony was taken into consideration by said body before taking such action. (3) Defendant says that his legal

and constitutional rights were invaded by his being compelled to testify before said body, and. that the indictment rendered after such testimony is invalid." The court struck the plea as follows: "Upon a motion to strike, by the solicitor-general, this plea in. abatement is stricken." The question for decision is, did the methods used, and for the purposes alleged in the plea in abatement, invalidate the indictment even though there were other competent witnesses who were sworn before the grand jury on the investigation? This question has never before been presented to the courts of review of this State, but it has been decided both affirmatively and negatively in many other jurisdictions, as we will hereinafter point out. The question grows out of a constitutional provision of our State. Our provision is to the same effect and import as those in the United States constitution, and in most, if not all, of those of the States, and has given rise to many learned and conflicting decisions in the several jurisdictions. Our constitution provides (Code, § 2-106), that "No person shall be compelled to give testimony tending in any manner to criminate himself." The right thus guaranteed was first presented for consideration to our Supreme Court in *Marshall* v. *Riley*, 7 *Ga.* 367, 370. The court said: "To compel the defendant . . to testify that the note which was the subject-matter of the action was given to him as a. fee for services rendered in curing a cancer upon the wife of Riley would be to furnish *all* the testimony needed to convict him under the statute; the presumption being, according to its provisions, that. he had no license. The maxim of the common law, nemo tenetur seipsum prodere, that no man is bound to accuse himself of any crime, or to furnish *any* evidence to convict himself of any crime,. is founded in great principles of constitutional right, and was not only settled in early times in England, but was brought by our ancestors to America, as a part of their birthright. 'This,' says Mr. Cooper, 'is a maxim of the law, founded upon the principles of' British freedom, and may be considered as one of our constitutional rights and privileges. It has been encroached upon in arbitrary reigns, and particularly while the Court of Star Chamber was in existence, of which the process and pleading were the same as in Chancery, but extended even to criminal informations, to which the party accused was obliged to answer on oath. *This drew it into the greatest odium, and was the principal cause of its downfall.* The

Court of Chancery, however, has never compelled a party to criminate himself, and the fate of the Court of Star Chamber has, perhaps, made it still more strict in the observance of this rule of pleading. And it is so fundamental a rule, that equity, which interferes in almost every other case to prevent the application of the general law from working injustice, will not interfere against this rule.' Eq. Pl. 203. It was the great boast of Lord Hardwick, says Judge Story, that the general rule, established with great justice and tenderness in the law of England, is fully recognized and acted on in courts of equity, that no person shall be obliged to discover what may *tend* to subject him to a penalty or punishment, or to that which is in the nature of a penalty or punishment. Harrison *vs.* Southcote, 2 Ves. 394. In Williams *vs.* Hannington (3 Bro. C. C. 35), the Lord Chancellor held, not only that answers would not be required, which would subject a party to a penalty or forfeiture or punishment for crime, or which would *tend thereto,* but that the defendant need not plead or demur to the bill, but upon exceptions to the answer he might insist he was not liable. See also, as to the right of the party to object to discovery in a matter *tending* to criminate him, or expose him to penalties, etc., Glynn *vs.* Houston, 1 Keen, 329; United States *vs.* Twenty-eight Packages, Gilpin, 306; Bishop of London *vs.* Fytche, 1 Bro. C. C. 97, and note; Wigram on Discovery, Prop. 2, 1 Amer. ed. 82 et seq.; 2 Stor. Eq. Jur. ch. 42, § 1494, and note, and numerous cases there cited."

Again, see *Higdon* v. *Heard,* 14 *Ga.* 255, a case based on the act of 1764, concerning recovery of gaming stakes for the descendants of the loser. We quote only from the headnotes: "At common law, and in chancery, no person can be compelled to testify against himself. In equity, he is not compelled to answer to any question which has a tendency to criminate him, or expose him to a penalty or forfeiture; or any question which may form a link in the chain of evidence by which crime, penalty, or forfeiture is to be established. . . These privileges do not extend to cases under the statute of Anne, as regards property and securities won at gaming; nor to cases under our act of 1764, upon the same subjects—those acts, by express enactment, requiring the defendant to answer." In *Kneeland* v. *State,* 62 *Ga.* 396, a contempt citation brought into question whether a witness could be compelled to testify in a gam-

ing case against another, where his evidence would criminate him; also the validity of the Code section 26-6407 (Cobb 815, 816). Our Supreme Court held in that case that such a witness could be compelled to testify, for the reason that the Code section also provided that such testimony could not be used against the witness except on a charge of perjury. In *Counselman v. Hitchcock*, 142 U. S. 547 (12 Sup. Ct. 195, 35 L. ed. 1110), the court said: "Under the 5th amendment to the constitution of the United States, which declares that 'no person . . shall be compelled in any criminal case to be a witness against himself,' where a person is under examination before a grand jury, in an investigation into certain alleged violations of the interstate-commerce act of February 4, 1887, 24 Stat. 379, and the amendatory act of March 2, 1889, 25 Stat. 855, he is not obliged to answer questions where he states that his answers might tend to criminate him, although § 860 of the Revised Statutes provides that no evidence given by him shall be in any manner used against him in any court of the United States, in any criminal proceeding." See annotation under *Higdon v. Heard*, supra. In *Wheatley v. State*, 114 *Ga*. 175 (39 S. E. 877), another contempt citation involving the same question of compelling a witness to give evidence against another in a gaming case, the Supreme Court was asked to review and overrule the decisions in *Higdon v. Heard* and *Kneeland v. State*, supra. The court stated: "Upon a review of the cases cited supra, four of the Justices of this court, Lumpkin, P. J., Fish, J., Cobb, J., and Lewis, J., are of the opinion that the decisions therein, to the effect above indicated, should be overruled; but as this can not be done without the concurrence of at least five Justices, the doctrine of those cases must stand as good law, binding upon the entire court. For this reason alone the four Justices herein named concur in the judgment."

While we are aware that the decisions cited do not deal directly with the question before us as to whether an indictment is invalid because the defendant himself is called before the grand jury and forced to give evidence against himself, they afford a direct approach to the question guided by high authority. Let us turn for the moment and examine our legislative enactments, and see whether they tend to illuminate the issue. The Code, provides: "In the investigation of complaints by the Public-Service Commis-

sion of violations of the laws against giving or granting rebates, or of underbilling, by common carriers, said commission is hereby given the power and authority to compel the shipper or consignee, or any officer, agent, or employee of a common carrier, to give evidence touching such complaints. Before any such person shall be compelled to give evidence touching such complaints, the commission shall make an order that such witness is required by the commission to testify, and that he is exempt thereafter from indictment or prosecution for any transaction about which he is so compelled to testify. When such order is made, the witness shall be compelled to give evidence touching such complaints, and he shall be forever free from indictment or prosecution in any court touching the matters about which he is compelled to testify." Code, § 93-506. "When a witness is exonerated from indictment or prosecution, as herein provided, he shall in like manner be compelled to give evidence in any suit or prosecution instituted in any of the courts of this State against any common carrier or against any person on account of the transactions about which he is compelled to testify before the Public Service Commission." § 93-507. "Every officer, agent, or employee of any common carrier, corporation, or company who shall violate, or procure, aid, or abet any violation, by any such common carrier or corporation or company, of any provision of this Title, or who shall fail to obey, observe, or comply with any order of the Public Service Commission or any provision of any order of the commission, or who aids or abets any such common carrier or corporation or company in its failure to obey, observe, and comply with any such order, direction, or provision, shall be guilty of a misdemeanor, and shall be subject to prosecution in any county in which said common carrier or corporation or company or officer, agent, or employee violates the provisions of this Title or any provision of any order of the commission, or in any county through which said corporation operates. Such officer, agent, or employee shall also be subject to indictment under the provisions of this Title, in any county in which a subordinate agent or employee of the company violates the provisions of this Title, by the approval or direction, or in consequence of the approval or direction of such officer, agent, or employee; and the agent or employee who locally in any county violates the rules or directions of said commission in pursuance of the direction or au-

thority of his superior officer or agent of said company may be called as a witness, and be compelled to testify, showing the authority by which he acted, and such testimony shall not be used against such subordinate employee or agent, nor shall he thereafter be subject to indictment for said offense." § 93-9901. "No party shall be required to discover matters tending to criminate himself, or to expose him to a penalty or forfeiture, nor to make discovery of irrelevant matters, nor the advice of his professional advisers, nor his consultation with them, nor matters relating to his own and not the plaintiff's case; nor shall official persons be called on to disclose any State matters of which the policy of the State and the interest of the community require concealment." § 38-1102. "No person shall be compelled to give testimony tending in any manner to criminate himself." § 38-417. "No person, who shall be charged in any criminal proceeding with the commission of any indictable offense or any offense punishable on summary conviction, shall be competent or compellable to give evidence for or against himself." § 38-416.

In State of Indiana v. Pence, 173 Ind. 99 (89 N. E. 488, 25 L. R. A. (N. S.) 818, 140 Am. St. R. 240, 20 Ann. Cas. 1180), it was held: "No person can be compelled to testify against himself (Const. art. 1, § 14), and this secures a person from being compelled to produce his private books and papers. . . An accused who is compelled by an order of court to give testimony, or furnish evidence, against himself 'touching the commission of any misdemeanor' is entitled to a discharge; and a plea in abatement stating such facts should be sustained." The court cited the following authorities: 3 Wigmore on Evidence, § 2264; Adams v. New York (1904), 192 U. S. 585 (24 Sup. Ct. 372, 48 L. ed. 575); Boyd v. United States (1886), 116 U. S. 616 (6 Sup. Ct. 524, 29 L. ed. 746); Duren v. Thomasville (1906), 125 Ga. 1 (53 S. E. 814); People ex rel. v. Reardon (1908), 124 App. Div. 818 (109 N. Y. Supp. 504); In re Beer, 17 N. Dak. 184 (115 N. W. 672, 17 Ann. Cas. 126); Ex parte Andrews, 51 Tex. Cr. 79 (100 S. W. 376); State v. Gardner, 88 Minn. 130 (92 N. W. 529); People ex rel. v. O'Brien, 176 N. Y. 253 (68 N. E. 353); People v. Argo, 237 Ill. 173 (86 N. E. 679); State v. Enochs, 69 Ind. 314; Frazee v. State, 58 Ind. 8; Ford v. State, 29 Ind. 541 (95 Am. D. 658); French v. Venneman, 14 Ind. 282; Wilkins v. Malone, 14 Ind. 153; Lister v. Boker, 6 Blackf. (Ind.) 439.

In People *v.* Bermel, 71 Misc. 356 (128 N. Y. Supp. 524, 26 N. Y. Crim. R. 47, 27 A. L. R. 147), it was held that the witness need not claim the privilege in order to render his indictment invalid, where it appears that the investigation in which he testifies is directed against him. Quoting from 27 A. L. R. 147: "In the latter case it was said: 'The constitution of this State provides that "no person shall be held to answer for a capital or otherwise infamous crime, . . unless on presentment or indictment of a grand jury, . . nor shall he be compelled in any criminal case to be a witness against himself." Art. 1, § 6. If the witness, upon such general investigation not aimed at him, fails to claim this privilege or constitutional right, his testimony may be used against him, or even be the basis of an indictment. But where, on the other hand, the investigation before the grand jury is a proceeding against him, or, being ostensibly a general investigation, is in fact, as shown by the circumstances and evidence, a proceeding against him, then the defendant's constitutional right is violated if he be subpœnaed before the grand jury, sworn and questioned, though he makes no claim of privilege or exemption. Briefly stated, if the person testifying is a mere witness, he must claim his privilege on the ground that his answers will incriminate; whereas, if he be in fact the party proceeded against, he can not be subpœnaed and sworn, even though he claim no privilege.' In the case last cited it was contended that in an investigation of a charge against the defendant, testimony given by him before the grand jury did not invalidate an indictment against him, since there was other evidence before that body to support the indictment. In answering this contention the court said: 'It does not do to call a defendant before the grand jury and cross-examine him, then, later, call other witnesses and base an indictment solely upon the testimony of the other witnesses, claiming that the illegal examination of the defendant can be disregarded and ignored or wiped out of the record. Such a procedure would open a very wide door for abuse and oppression. It may very well be that Charles Bermel committed perjury, and that no particular harm was done him, individually, by his examination before the grand jury, as he can be readily indicted again upon proper testimony, and should be; but in the interests of orderly procedure, and of those methods which heretofore have seemed wise and safe for the administration of the criminal law, I must set this indictment aside.'"

People *v.* Bermel, supra, is almost like the instant case. In United States *v.* Swift, 186 Fed. 1002, 1019, the court observed: "It is one thing to quash an indictment because the accused, in violation of his constitutional right, is brought before the grand jury and browbeaten or maltreated, or because private counsel is permitted to harangue the jurors, or because other like fundamental wrongs are permitted, and quite another thing to quash an indict-ment because a witness is asked concerning facts which mayhap do not tend to prove the charge which the grand jury is to inquire into." It was held, in State *v.* Froiseth, 16 Minn. 296 (16 Gil. 260), Boone *v.* People, 148 Ill. 440 (36 N. E. 99), State *v.* Bramlett, (Miss.) 47 So. 433, cited in 47 L. R. A. (N. S.) 1210, under heading "Where accused compelled to testify against himself," that indictments should be quashed where the accused was haled before the grand jury to testify against himself.

Counsel for the State argues that the court did not err in striking the plea, because (1) the plea did not allege that the indictment was returned upon testimony of the defendant alone, and the indictment showed to the contrary; and (2) the plea did not show what testimony was compelled, and whether such testimony tended to incriminate him. On the first of these propositions, *Powers* v. *State,* 172 *Ga.* 1 (157 S. E. 195), and *Lennard* v. *State,* 104 *Ga.* 546 (30 S. E. 780), are cited. It is conceded that the court will not investigate as to the sufficiency of the evidence before the grand jury. This is a different question, and is dealt with fully and sufficiently, we think, in the citations above. As to the second proposition, we think the plea itself is a complete answer. It alleges that the defendant was called before the grand jury and compelled to testify before that body concerning the truth of the accusation, and was *forced* to testify before the "true bill" was returned, and that this testimony was taken into consideration by that body before returning the bill. We think to require him to go further would still be an invasion of his constitutional right. After consideration of what has been said, we feel that it can be safely said that the grand jury had no lawful right to call the accused before it while considering the bill of indictment against him, and swear or question him regarding such charge. We think it was against the public policy of this State. If the defendant could be called, why not call all of his witnesses, and have a final

24

hearing before the grand jury behind closed doors? To do either was never within the contemplation of the jurisdiction or authority of the grand jury. The province of the grand jury is to hear the State's case, and from that consider whether a true bill should be returned and the defendant have a public trial on the charges against him; and even then he is not competent nor compellable to testify, and can not even be convicted upon his confession alone.

*Judgment reversed. Broyles, C. J., and MacIntyre, J., concur.*