In the Supreme Court of Georgia

Decided: March 16, 2015

S14G0591.  THE STATE v. LAMPL.

HUNSTEIN, Justice.

We granted the State's petition for a writ of certiorari in this criminal case to determine whether the Court of Appeals properly affirmed the superior court's order dismissing a particular count of the indictment and suppressing statements made by the defendant, Appellee John James Lampl, before a special purpose grand jury.  While we agree with the superior court's conclusion that the special purpose grand jury exceeded the scope of its authority in its investigation, we hold that the relief granted was improper.  We therefore reverse.

In March 2011, the Chief Judge of the Clayton Judicial Circuit, at the request of the Clayton County District Attorney, issued an order pursuant to OCGA § 15-12-100 authorizing the impaneling of a special purpose grand jury to investigate certain alleged public corruption.  The special purpose grand jury issued subpoenas to various witnesses, including Lampl, who testified before it in June 2011.  In July 2011, the special purpose grand jury returned a 16-count

bill of indictment against Lampl on charges of conspiracy in restraint of free and open competition, false statements and writings, and perjury. The indictment was subsequently nolle prossed in the aftermath of the Court of Appeals' holding in Kenerly v. State, 311 Ga. App. 190 (715 SE2d 688) (2011), that the authority of a special purpose grand jury is limited to conducting investigations and does not include the power to issue indictments.

Shortly thereafter, in September 2011, Lampl was indicted by a regular Clayton County grand jury on eight counts, including one perjury count, similar to those charged in the special purpose grand jury's initial indictment. The conspiracy and false statements counts all pertain to alleged conduct by Lampl, in his capacity as City Manager for the City of Morrow, in connection with a City real estate development project known as "Olde Towne Morrow." The perjury count is based on an alleged false statement Lampl made in the course of his testimony before the special purpose grand jury.[1]

Through counsel, Lampl filed a bevy of pretrial motions, including (1) a Motion to Quash Count VIII (the perjury count) and (2) a joint Motion to Dismiss Count VIII and Motion to Suppress Defendant's Alleged Statements

---

[1]Specifically at issue is Lampl's statement that "Olde Towne Morrow has no debt on it. It's all paid for."

Made to Grand Jury.  Lampl also moved to compel the production of the special

purpose grand jury's impaneling order, which had been filed under seal.   The

trial court subsequently ordered that the impaneling order be unsealed and a

redacted version of the order, omitting the names of the particular individuals

identified as subjects of the investigation, be released to the parties.

The impaneling order calls for the formation of "a special purpose grand

jury for the purpose of investigating public corruption and various crimes

allegedly committed by currently or previously elected county officials and

county employees."   It is undisputed that, during the time period under

investigation, Lampl was an official with and employee of the City of Morrow,

not Clayton County, and that Olde Towne Morrow was a project undertaken by

the City, not the County.  It is also undisputed that Lampl's name was not

among those specifically referenced in the impaneling order as subjects of the

investigation.[2]

Contending that the impaneling order did not authorize the special purpose

grand jury to investigate alleged corruption by City officials, Lampl then filed

a Plea in Bar and Motion to Dismiss with Prejudice, seeking dismissal of either

---

[2]Though the names have been redacted from the order, the trial judge expressly noted for the record that Lampl's name does not appear in the unredacted version.

3

the entire indictment or, in the alternative, Count VIII. In the motion, Lampl asserted that the special purpose grand jury had exceeded its authority in investigating Old Towne Morrow, a non-County project, and unlawfully targeted Lampl, a non-County employee. Lampl argued further that the Clayton County District Attorney, by knowingly employing the special purpose grand jury to investigate matters outside the scope of the impaneling order, had committed a "gross abuse of the Grand Jury system," which justified dismissal of the entire indictment as a sanction. Short of dismissal of the entire indictment, Lampl urged the superior court to dismiss the perjury count because it was based upon a statement made before a grand jury that was unlawfully convened and which, thus, lacked authority to issue an oath.

Following a hearing on this and certain of the other pretrial motions, the superior court agreed with Lampl that the special purpose grand jury had exceeded its authority and granted his requested relief in part. Relying on the reasoning of Kenerly v. State, supra, the court held that the authority of a special purpose grand jury "is limited to the purpose stated when it is impaneled by the Chief Judge of the Superior Court" and that, here, the plain language of the

impaneling order authorized the investigation of public corruption <u>only</u> involving county officials and employees. The court thus concluded that the special purpose grand jury had exceeded its authority in investigating the Olde Towne Morrow project and in compelling Lampl's testimony before it. Consequently, the court quashed and dismissed the perjury count and suppressed from evidence Lampl's testimony before the special purpose grand jury and all evidence derived therefrom. Finding that the indictment was returned by a properly constituted grand jury, however, the court declined to dismiss the remainder of the indictment.

On cross-appeals by both sides, the Court of Appeals affirmed, agreeing that the special purpose grand jury had exceeded its authority in investigating Olde Towne Morrow and subpoenaing Lampl and that the perjury count was thus properly dismissed. <u>State v. Lampl</u>, 325 Ga. App. 344 (1) (750 SE2d 685) (2013). Regarding the superior court's refusal to dismiss the remainder of the indictment, the appellate court concluded that even

> [a]ssuming that the unauthorized investigation of Lampl . . . involved prosecutorial misconduct which violated Lampl's due process rights, the dismissal of the indictment is not appropriate because Lampl was afforded an adequate remedy, i.e., the suppression of his statements.

5

Id. at 348. Both sides thereafter filed petitions for certiorari in this Court. We granted the State's petition for writ of certiorari to determine whether the Court of Appeals erred in concluding that the superior court properly dismissed the perjury count and properly ordered the suppression of Lampl's testimony before the special purpose grand jury.[3]

1. We agree with the courts below that the special purpose grand jury exceeded its authority in investigating the Olde Towne Morrow project and Lampl's involvement in it without any effort to connect that project or Lampl to potential crimes by county officials or employees. OCGA § 15-12-100 (a) authorizes the impaneling of a special purpose grand jury "for the purpose of investigating any alleged violation of the laws of this state or any other matter subject to investigation by grand juries as provided by law." Once impaneled and constituted in accordance with the statute, a special purpose grand jury is empowered to compel evidence, subpoena witnesses, and inspect public documents "which relate directly or indirectly to the subject of the investigation." Id. at (c). Unless otherwise specified in the statute, the duties

---

[3]We denied Lampl's petition for certiorari and thus have no occasion to expressly address whether the superior court erred in declining to dismiss the indictment in its entirety.

6

of a special purpose grand jury "shall be confined to such matters and things as it is required to perform by the Constitution and laws *or by order of any superior court judge.*" (Emphasis added.) OCGA § 15-12-71 (a) (delineating duties of grand juries generally); see also OCGA § 15-12-102 (except as otherwise provided, law relative to grand juries generally applies to special purpose grand juries). From the foregoing authorities, it follows that a special purpose grand jury has the power to compel testimony and other evidence only insofar as it relates "directly or indirectly to the subject of the investigation" as set forth in the order authorizing its impaneling.

Here, the impaneling order on its face authorizes the investigation of public corruption and crimes allegedly committed by current or former "county officials and county employees." There is no dispute that Lampl is neither a current nor former county official or employee and that Olde Towne Morrow is not a county project. As the superior court and Court of Appeals both concluded, we, too, hold that the special purpose grand jury lacked the authority to investigate Olde Towne Morrow or Lampl's conduct with regard to that project independent of any connection to potential criminal conduct by county officials or employees.

2. Having determined that the Olde Towne Morrow project and Lampl's involvement therein were not proper subjects of the special purpose grand jury's investigation, we must now consider the propriety of the relief granted by the superior court. We conclude that the superior court erred in dismissing the perjury count and in suppressing Lampl's grand jury testimony as sanctions for the special purpose grand jury's overreach, because the conduct of the special purpose grand jury, though improper, did not constitute a violation of Lampl's constitutional rights or otherwise rise to the level necessary to justify these sanctions.

Dismissal of an indictment and suppression of evidence are extreme sanctions, used only sparingly as remedies for unlawful government conduct. See Wilcox v. State, 250 Ga. 745 (4) (301 SE2d 251) (1983) (remedy for government misconduct should be tailored to injury suffered and thus dismissal of indictment is generally disfavored); Robinson v. State, 200 Ga. App. 515, 517 (1) (408 SE2d 820) (1991) ("'dismissal is an extreme sanction which should be infrequently utilized'"); see also Tew v. State, 246 Ga. App. 270, 271 (1) (539 SE2d 579) (2000) (physical precedent only) ("[t]he exclusion of evidence is an extreme sanction and one not favored in the law"). Unless expressly authorized

8

by statute, such sanctions generally "cannot be imposed absent a violation of a constitutional right," Lopez v. State, 274 Ga. 663, 665 (2) (558 SE2d 698) (2002); accord Villegas v. State, 273 Ga. 824 (6) (546 SE2d 504) (2001); Tew, 246 Ga. App. at 272-273, or in the rare case in which the State's action has compromised "'the structural protections of the grand jury [and thus] render[ed] the proceedings fundamentally unfair.'" Colon v. State, 275 Ga. App. 73, 78 (3) (619 SE2d 773) (2005) (quoting Bank of Nova Scotia v. United States, 487 U. S. 250 (108 SCt 2369, 101 LE2d 228) (1988)).  See, e.g., State v. Brown, 293 Ga. 493 (748 SE2d 376) (2013) (dismissal was warranted where indictment was returned in a forum other than "open court"); Colon, 275 Ga. App. at 78 (dismissal would be warranted where the prosecutor remains present during the grand jury's deliberations).  While in rare instances the exclusionary rule has been applied as a remedy for the violation of a statute, this generally holds only if the statutory violation implicates underlying constitutional interests.  See Sanchez-Llamas v. Oregon, 548 U. S. 331, 348 (126 SCt 2669, 165 LE2d 557) (2006) (suppression has been approved as a remedy for statutory violations only where violation "implicated important Fourth and Fifth Amendment interests").

As we held in Division 1, Lampl has established a violation of the

impaneling order, which fixed the scope of the special purpose grand jury's investigative powers. Such a violation, by definition, also constitutes a violation of the statutory provisions delimiting the scope of a grand jury's duties. See OCGA §§ 15-12-71 (a), 15-12-102. However, the grand jury statutes nowhere authorize either dismissal of an indictment or suppression of evidence as a remedy for a grand jury's overreach. Moreover, Lampl has established neither a violation of his constitutional rights nor a structural defect in the grand jury process. While Lampl attempts to elevate the overbreadth of the investigation into the constitutional realm by characterizing it as a due process violation, we do not agree with this characterization.

Lampl first contends that the prosecutor purposefully misused the special purpose grand jury to investigate matters she knew were outside the scope of the impaneling order, thereby violating his due process rights.[4] Even if such

_____

[4]We note that the majority of cases Lampl cites in support of his due process argument not only involve far more egregious facts but also are procedurally inapposite, in that they were decided on appeal post-trial, where the remedy sought was not dismissal of an indictment but rather reversal of one or more convictions. See, e.g., Rochin v. California, 342 U. S. 165 (72 SCt 205, 96 LE 183) (1952) (police conduct sufficiently outrageous to require reversal, where police unlawfully entered defendant's home and, when defendant swallowed pills suspected to be illegal drugs, forcibly removed him from home, took him to hospital, and directed staff to pump his stomach to extract pills, which were ultimately used as evidence at trial); Byrd v. Owen, 272 Ga. 807 (1) (536 SE2d 736) (2000) (prosecution's failure to disclose

egregious ill intent were borne out in the record, we discern no due process violation. As the trial court found, Lampl's current indictment was returned not by the allegedly manipulated special purpose grand jury but rather by an independent, properly constituted regular grand jury. Even if, as Lampl contends, some of the evidence presented to the regular grand jury emanated from the unlawful investigation by the special purpose grand jury, this in itself is of no moment, for grand juries, unlike petit juries, are authorized to consider evidence without regard to its eventual admissibility at trial. See Mitchell v. State, 239 Ga. 456, 459 (3) (238 SE2d 100) (1977) ("'[t]he evidence which the grand jury receives in finding a true bill is not subject to inquiry'"); accord Anderson v. State, 258 Ga. 70 (11) (365 SE2d 421) (1988); see also United States v. Calandra, 414 U. S. 338, 343 (II) (94 SCt 613, 38 LE2d 561) (1974) (grand jury's "operation generally is unrestrained by the technical procedural and evidentiary rules governing the conduct of criminal trials").

---

immunity agreement with its primary witness violated defendant's due process rights and justified reversal); Carr v. State, 267 Ga. 701, 711 (10) (482 SE2d 314) (1997) (indicating that "extensive pattern" of improper and in some instances illegal conduct by prosecutor prior to and during trial might in itself justify reversal on due process grounds), overruled in part on other grounds by Clark v. State, 271 Ga. 6 (5) (515 SE2d 155) (1999); Williams v. State, 258 Ga. 305 (1) (A) (369 SE2d 232) (1988) (noting in dicta that prosecutor's knowing use of perjured testimony would constitute a due process violation).

In addition, Lampl makes much of the fact that he was, he contends, the "target" of the special purpose grand jury's investigation and that, therefore, the act of subpoenaing him to testify violated his constitutional right against compelled self-incrimination. Lampl's assertion is misplaced. It is well established that "the Fifth Amendment does not prevent the grand jury from subpoenaing [a] prospective defendant, or target, to appear as a witness." Sara Sun Beale et al., Grand Jury Law & Practice, § 6:12 (2d ed.); accord United States v. Washington, 431 U. S. 181 (97 SCt 1814, 52 LE2d 238) (1977) (Fifth Amendment does not prohibit the use of grand jury testimony by a "target witness" in a later prosecution of that witness). Rather, the Fifth Amendment operates in grand jury proceedings to permit witnesses who are subpoenaed to refuse to answer specific questions, the answers to which the witness reasonably believes would be incriminating. See United States v. Mandujano, 425 U. S. 564, 574-575 (96 SCt 1768, 48 LE2d 212) (1976); see also Hoffman v. United States, 341 U. S. 479, 486 (71 SCt 814, 95 LE 1118) (1951) (privilege may be invoked in grand jury proceedings where "witness has reasonable cause to apprehend danger from a direct answer"). Here, Lampl never sought to assert his privilege, either prior to or during his testimony before the special purpose

12

grand jury, and thus he has suffered no violation of his Fifth Amendment rights.

Our state constitutional privilege against self-incrimination, Ga. Const. of 1983, Art. I, Sec. 1, Par. XVI, generally functions in this same manner. See generally Paul S. Milich, Ga. Rules of Evidence, § 27:1, p. 946 (2014-2015 ed.). Of relevance to the subject of the "target witness," our evidence code prohibits a grand jury from compelling the very <u>appearance</u> of a witness – as opposed to his incriminating testimony in response to specific questions – only where that witness has been "charged in [a] criminal proceeding with a criminal offense." Former OCGA § 24-9-20 (a)[5]; accord <u>State v. Butler</u>, 177 Ga. App. 594 (340 SE2d 214) (1986); <u>Jenkins v. State</u>, 65 Ga. App. 16 (14 SE2d 594) (1941) (construing predecessor to former OCGA § 24-9-20 (a)). This prohibition applies only to those who have been charged with an offense – i.e., accused in a returned or proposed charging document – at the time they are called to testify. Compare <u>Jenkins</u>, 65 Ga. App. at 23 ("the grand jury had no lawful right to call the accused before it while considering the bill of indictment against him"), with <u>Butler</u>, 177 Ga. App. at 595 (grand jury was authorized to subpoena witness who, though later indicted, was "not charged with, or accused of, any offense

---

[5]Under the new Georgia Evidence Code, effective for proceedings held on and after January 1, 2013, this provision is codified at OCGA § 24-5-506 (a).

at the time she was called"). One who has not been so charged may be compelled to appear before a grand jury, though he retains the option, during his appearance, of invoking his privilege against self-incrimination and refusing to testify regarding incriminating matters. Butler, 177 Ga. App. at 594-595.[6] This is true even if the witness is a "target" of the grand jury's investigation.[7]

Here, there is no evidence in the record that, at the time Lampl testified before the special purpose grand jury, he had been actually charged in any

_____

[6]We note that, in Jenkins, the Court of Appeals based its holding on not only statutory but also state constitutional grounds, citing the predecessor to our current state constitutional provision prohibiting compelled self-incrimination. See Jenkins, 65 Ga. App. at 17. Though this Court has since endorsed that constitutional holding in dicta, see Williams v. State, 208 Ga. 704 (2) (69 SE2d 199) (1952); Bradford v. Mills, 208 Ga. 198 (1) (66 SE2d 58) (1951), we do harbor doubts about the underpinnings of that holding, particularly given the Jenkins court's reliance on the similarity between our state constitutional provision and the Fifth Amendment, see Jenkins, 65 Ga. App. at 17, which, since Jenkins, Williams, and Bradford were decided, has been definitively construed by the U.S. Supreme Court as prohibiting only compelled incriminating testimony rather than compelled appearance. See Washington, 431 U. S. at 188. We need not here, however, decide whether the proscriptions of former OCGA § 24-9-20 (a) are coterminous with or an expansion of our state constitutional protections against self-incrimination because, as we note infra, Lampl has failed to establish even a statutory violation. We therefore assume for present purposes that the state constitutional privilege, like the statute, prohibits not only compelled testimony but also the compelled appearance of a witness who has been charged in the proceeding at hand.

[7]To the extent commentators have construed Jenkins to prohibit the subpoenaing of target witnesses, we disagree with this reading of Jenkins. See Wayne R. LaFave et al., 3 Crim. Proc. § 8.10 (c), n.51 (3d ed.); Beale, Grand Jury Law and Practice, § 6.12, n.35.

indictment or presentment.[8] Accordingly, while the special purpose grand jury lacked proper authority to subpoena Lampl, the act of doing so did not violate Lampl's privilege against compelled self-incrimination in any of its constitutional or statutory incarnations.

For the foregoing reasons, the superior court erred in dismissing Count VIII and in suppressing Lampl's testimony before the special purpose grand jury as sanctions to remedy the overbreadth of the special purpose grand jury's investigation. Accordingly, we reverse.[9]

_Judgment reversed. All the Justices concur._

---

[8]On this point, Lampl offers only innuendo, highlighting the fact that the oath administered before his testimony made reference to a "presentment" and the close proximity in time (one week) between Lampl's testimony and the return of the (ultimately nolle prossed) special purpose grand jury indictment. In short, Lampl offers no evidence that he had in fact been named in any charging document at the time he was subpoenaed to appear before the special purpose grand jury.

[9]In so doing, we express no opinion as to the substantive viability of the perjury count, an issue that the trial court may have occasion to entertain on remand. See OCGA § 16-10-70 (a) (defining offense of perjury); State v. Bartel, 223 Ga. App. 696, 696-697 (479 SE2d 4) (1996) (perjury prosecution authorized as to false grand jury testimony, "so long as the grand jury is lawfully conducting an investigation authorized by state law"); Crow v. State, 55 Ga. App. 288, 289 (190 SE 65) (1937) (perjury can be established only if false testimony given before a "'legally constituted court'").