## THE STATE OF INDIANA *v.* PENCE.

[No. 21,427.   Filed October 29, 1909.]

1. INTOXICATING LIQUORS.—*Sales by Druggists.—Prescriptions.—Applications.—Compelling to Produce.*—Under §8352 Burns 1908, Acts 1907, p. 689, §2, providing that druggists shall keep on file and carefully preserve for one year all prescriptions and applications for intoxicating liquors, and making it unlawful to sell except upon a physician's written prescription, or upon an application by one known not to be in the habit of drinking liquor as a beverage, a druggist cannot be compelled to disclose such applications where the purpose is to prosecute him for making unlawful sales.   pp. 103, 104.

2. CONSTITUTIONAL LAW.—*Intoxicating Liquors.—Sales by Druggists.—Public Records.*—The legislature has the power to require druggists to keep a public record of all sales of intoxicating liquors.   p. 103.

3. STATUTES.—*Criminal.—Construction.*—Criminal and penal laws are strictly construed, and omitted words cannot be supplied by the courts.   p. 103.

4. CONSTITUTIONAL LAW.—*Compelling Person to Testify Against Himself.*—No person can be compelled to testify against himself (Const. Art. 1, §14), and this secures a person from being compelled to produce his private books and papers.   p. 104.

5. CRIMINAL LAW.—*Compelling Accused to Testify Against Himself.—Discharge.—Plea in Abatement.*—An accused who is compelled by an order of court to give testimony, or furnish evidence, against himself "touching the commission of any misdemeanor" is entitled to a discharge; and a plea in abatement stating such facts should be sustained.   p. 105.

From Henry Circuit Court; *J. W. Macy,* Special Judge.

Prosecution by The State of Indiana against William M. Pence. From a judgment for defendant, the State appeals. *Affirmed.*

*James Bingham,* Attorney-General, *A. G. Cavins, E. M. White, W. H. Thompson* and *George M. Barnard,* Prosecuting Attorney, for the State.

*Forkner & Forkner,* for appellee.

MONTGOMERY, C. J.—Appellee, a druggist, was charged by indictment, in two counts, with having made a sale of whisky

without license. The first count alleged that the sale was not made for medicinal, industrial or scientific purposes, and the second, that the purchaser was not a person known to appellee not to be in the habit of using liquors as a beverage. The State's demurrer to a plea in abatement of the indictment was overruled, and, the State declining to plead further, appellee was discharged.

The correctness of the ruling upon demurrer is the only question presented for our decision.

The plea in abatement alleged facts in detail, showing, in substance, that, after repeated refusals so to do, appellee was required, by order of the circuit court, to produce and

1.  deliver to the grand jury of the county, within a prescribed time, all applications made to him by persons desiring to purchase liquors, upon which sales were made by him, for the use of said grand jury in investigating alleged illegal sales of liquor made by him as a druggist, in violation of what is commonly known as the blind tiger law; that he did deliver such applications to said jury involuntarily, and only because he was coerced so to do by the order and judgment of the circuit court, and to avoid threatened arrest and imprisonment, and disgrace to himself and family; that the indictment in this cause was based wholly upon the applications delivered by him to said grand jury under duress as aforesaid, and without any other evidence of any kind or character, and that the indictment was not found or returned upon any knowledge of any member of the grand jury or any officer thereof, or upon any evidence or information given by defendant to the grand jury.

This prosecution was founded upon the act of March 16, 1907 (Acts 1907, p. 689, §§1, 2, §§8351, 8352 Burns 1908).

It is provided by section one of said act:

"That any person not being licensed under the laws of the State of Indiana who shall sell * * * any spirituous * * * liquors except as herein provided," shall be guilty of a misdemeanor, "provided, that none

of the provisions of this section shall apply to any druggist or pharmacist who is licensed as such by the State Board of Pharmacy.''

Section two provides:

''It shall be lawful for any druggist or pharmacist to sell vinous or spirituous liquors in quantities not less than a quart at a time for medicinal, industrial or scientific purposes, and for no other purposes, and then only upon the written (not printed or type-written) prescription of a reputable physician in active practice, or upon the written and signed application of any other person who is personally known to such druggist or pharmacist and who is by him known not to be a person in the habit of using intoxicating liquors as a beverage, such person stating therein that such liquor is desired and will be used for medicinal, scientific or educational purposes only, and upon making such sale such druggist shall indorse in writing on such application a statement that in his opinion such liquor is desired for the purposes last above stated, and for no other purposes whatever.  *  *  *  Such prescription or application shall be plainly written, dated and signed in his or her full and correct name, by the maker thereof, and the date of sale shall be plainly written thereon by the person making such sale, and such prescription or application shall be filed and carefully preserved for at least one year from the date of such sale, by the person making such sale, and only one sale shall be made under such prescription or application.''

It is further provided that any person violating the provisions of the act shall be punished by a fine, and for a second offense the license of the druggist or pharmacist shall be revoked; and any person making any false or misleading statement touching the purpose for which such liquor is purchased, or who shall use the same as a beverage, shall be fined, and for a second offense shall be imprisoned in the county jail.

The contention in this case arises from differing views as to the legislative purpose in requiring the preservation of such written prescriptions and applications for liquors.  The Attorney-General argues that under the law these papers

when filed become public documents, and are preserved wholly for the use and benefit of the public, while counsel for appellee insist that they are private papers, the production of which for use as evidence cannot be enforced in a criminal proceeding against the druggist charged with their custody.

In our opinion, it was not the intent of the legislature to deprive druggists and pharmacists of their proprietary interest and privacy in such papers, and that it has not done so. No sales of intoxicating liquors by a druggist or pharmacist are authorized except for specified uses, and then only upon compliance with the numerous restrictions and limitations of this act. If an illegitimate sale of liquor be made by a druggist or pharmacist, the fact and consequence are likely soon to become manifest, and prosecution, if any, be instituted within one year. If the prosecution be directed against the seller, his justification for the sale must, in large measure, appear in writing made at the time and preserved by himself. If the prosecution be against the purchaser for misrepresentation, or for misuse of the liquor, the writing may be available for the use of the State in proving the offense charged. In either case the evils resulting from a resort to uncertain and treacherous memories, and the commission of perjury, are obviated.

Numerous cases from other states have been cited, wherein the use of similar papers and records as evidence has been enforced and justified, but in every instance the statute providing for their preservation in express terms subjected them either to the custody or inspection of police and public officials.

The statute of Massachusetts upon this subject reads as follows: ''The book, certificates and prescriptions before provided for, or referred to, shall at all times be open, in the city of Boston to the inspection of the board of police, and in all cities and towns of the commonwealth to the inspection of the mayor and aldermen, board of license com-

missioners, selectmen, overseers of the poor, sheriff, con-
stables, police officers and justices of the peace.'' Acts 1887
(Mass.), chap. 432, §4.

In Michigan, every druggist is required on Monday to
make detailed weekly reports of sales of liquor, and to de-
liver or mail such report ''to the prosecuting attorney of
the county where such store is situated, who shall preserve
the same in his office, and all such statements shall be open
to inspection to all citizens.'' Acts 1899 (Mich.), p. 280, §25.
The statutes of Kansas and North Dakota require drug-
gists to keep a daily record of sales, and provide that ''such
record and affidavits shall be open for the inspection of the
public at all reasonable times during business hours, and
any person so desiring may take memoranda or copies
thereof.'' Laws 1887 (Kan.), chap. 165, §2. Laws 1890
(N. Dak.), chap. 110, §4. In the State of Washington, drug-
gists are required to keep a register of all sales of liquor,
giving details, which ''shall at all times, during business
hours, be subject to the inspection of the prosecuting attor-
ney, or to any authorized agent of the board of pharmacy.''
Laws 1891 (Wash.), p. 372, §12. In Iowa, druggists are re-
quired to make bi-monthly reports to the county auditor of
all requests for liquor filled by them and their clerks. Acts
1890 (Iowa), chap. 35, §11.

The legislature had undoubted power to impose such rea-
sonable restrictions upon sales of liquor by druggists as it
deemed necessary to the public good, and in the light
2. of existing legislation in other states upon the same
subject, and from which our statute was doubtless
borrowed, we can see no excuse for the omission of specific
provisions subjecting all applications for liquor to police in-
spection, or requiring them to be filed in a public office, if
it was the legislative desire and purpose to make such papers
public documents. We are not warranted in sup-
3. plying words which appear to have been designedly
omitted, or, in accomplishing the same result indi-

rectly, by giving to the words used the broad import and meaning for which the State contends. It is a familiar principle that statutes which are criminal or penal in their nature, or which are in derogation of a common-law right, must be strictly construed. *Fahnestock* v. *State* (1885), 102 Ind. 156; *Steel* v. *State* (1866), 26 Ind. 82; *Commonwealth* v. *Beck* (1904), 187 Mass. 15, 72 N. E. 357; *Chicago, etc., R. Co.* v. *People* (1905), 217 Ill. 164, 75 N. E. 368; *Clark* v. *American Express Co.* (1906), 130 Iowa 254, 106 N. W. 642; *State* v. *Woodruff* (1902), 68 N. J. L. 89, 52 Atl. 294; *Gray* v. *Stewart* (1904), 70 Kan. 429, 78 Pac. 852, 109 Am. St. 461; *Casey* v. *St. Louis Transit Co.* (1905), 116 Mo. App. 235, 91 S. W. 419; *Texas, etc., R. Co.* v. *Blocker* (1908), (Tex. Civ. App.), 106 S. W. 718; *Johnson* v. *State* (1907), 1 Ga. App. 195, 58 S. E. 265.

It is our conclusion, therefore, that, under the statute now before us, a druggist or pharmacist cannot be compelled to produce, for use as evidence before a court or grand jury, in a proceeding where such use may tend to incriminate himself, prescriptions and applications for intoxicating liquors sold by him.

The bill of rights in the Constitution of this State provides: "No person, in any criminal prosecution, shall be compelled to testify against himself." Constitution, Art. 1, §14. This constitutional guaranty secures a person against the involuntary production of his private books and papers in response to any process or order of court addressed to him in the character of a witness, as well as against the giving of compulsory testimony in every case where the use of such documentary evidence, or such testimony, may tend to incriminate himself. 3 Wigmore, Evidence, §2264; *Adams* v. *New York* (1904), 192 U. S. 585, 24 Sup. Ct. 372, 48 L. Ed. 575; *Boyd* v. *United States* (1886), 116 U. S. 616, 6 Sup. Ct. 524, 29 L. Ed. 746; *Duren* v. *City of Thomasville* (1906), 125 Ga. 1, 53 S. E. 814; *People, ex rel.,* v. *Reardon* (1908), 124 Hun, App. Div., 818,

109 N. Y. Supp. 504; *In re Beer* (1908), (N. Dak.), 115 N. W. 672; *Ex parte Andrews* (1907), 51 Tex. Cr. 79, 100 S. W. 376; *State* v. *Gardner* (1902), 88 Minn. 130, 92 N. W. 529; *People, ex rel.,* v. *O'Brien* (1903), 176 N. Y. 253, 68 N. E. 353; *People* v. *Argo* (1908), 237 Ill. 173, 86 N. E. 679; *State* v. *Enochs* (1879), 69 Ind. 314; *Frazee* v. *State* (1877), 58 Ind. 8; *Ford* v. *State, ex rel.* (1868), 29 Ind. 541, 95 Am. Dec. 658; *French* v. *Venneman* (1860), 14 Ind. 282; *Wilkins* v. *Malone* (1860), 14 Ind. 153; *Lister* v. *Boker* (1843), 6 Blackf. 439.

The offense charged against appellee is a misdemeanor under our classification of offenses, and it is shown by the plea in abatement that the indictment was found 5. and returned upon evidence coerced from him over his constitutional objection, and given against his will. It is provided by statute in this State that "whenever any person is required to testify touching the commission of any misdemeanor * * * he shall not be liable to trial by indictment or affidavit, or to punishment for such misdemeanor." Acts 1905, p. 584, §237, §2113 Burns 1908. See, also, *Mackin* v. *People* (1885), 115 Ill. 312, 3 N. E. 222; *State* v. *Gardner, supra.*

It follows that appellant's demurrer to the plea in abatement was correctly overruled.

The judgment is affirmed.