WITTE v. DOWD, WARDEN

[No. 28,718. Filed December 20, 1951. Rehearing denied April 10, 1952.]

*James C. Cooper,* Public Defender of Indiana, and *Harold Fiely,* Deputy Public Defender, for appellant.

*J. Emmett McManamon,* Attorney General; *George W. Hand* and *John Ready O'Connor,* Deputy Attorneys General, for appellee.

EMMERT, J.—This is an appeal from a judgment entered upon an order of the trial court sustaining a motion to quash a writ of habeas corpus.

The complaint for the writ disclosed the following proceedings and judgment had in the Superior Court of LaPorte County on the 28th day of September, 1936, to-wit:

"Comes now the State of Indiana, by Clarence T. Sweeney, Deputy Prosecuting Attorney, and comes also the defendant in his own proper person, and being present in open court, and being arraigned and being required to say how he will acquit himself of the charge made against him in the affidavit filed herein, for plea thereto says that he is guilty as charged, to-wit: Forgery and Habitual Criminal, and the court now finds said defendant guilty as charged.

"The court further finds said defendant's age to be twenty-nine (29) years.

"It is therefore considered, adjudged and decreed by the court that said defendant, for the offense by him committed be sentenced to the Indiana State Prison, for and during the period of his life, from this date.

". . ."[1]

The record does not contain a copy of the affidavit or indictment under which appellant was prosecuted, but on review we must consider that such pleading contained a proper charge of forgery and two prior convictions, sentences and imprisonment in some penal in-

---

[1] The State was unsuccessful in its effort to correct this judgment *nunc pro tunc. Witte* v. *State* (1950), 228 Ind. 153, 90 N. E. 2d 802.

stitution for felonies pursuant to the requirements of §§9-2207, 9-2208, Burns' 1942 Replacement. *Crawford* v. *Lawrence* (1900), 154 Ind. 288, 56 N. E. 673; *Goodman* v. *Daly, Warden* (1929), 201 Ind. 332, 165 N. E. 906.

The motion to quash the writ admitted the facts well pleaded in the complaint. *Schleuter* v. *Canatsy et al.* (1897), 148 Ind. 384, 47 N. E. 825; *Willis* v. ■ *Willis* (1905), 165 Ind. 325, 75 N. E. 653. It tested the sufficiency of the complaint the same ·as a demurrer for want of facts in an ordinary action. *McDonald* v. *Short, Supt.* (1921), 190 Ind. 338, 130 N. E. 536; *Dinkla* v. *Miles* (1934), 206 Ind. 124, 188 N. E. 577.

"A writ of habeas corpus is an ancient common law remedy for imprisonment without just cause, the origin of which is obscure by reason of its great an- ■ tiquity. Harold Hulme, *Our American Heritage: Freedoms Derived from the English Constitution* 32 Am. Bar Assn. J. 849, 851; 25 Am. Jur. 144, 145, §3; 29 C. J. 7, §1; 39 C. J. S. 426, §1. By virtue of its recognition in the Bill of Rights of the Constitution of Indiana, the privilege of the writ exists independent of the statute and flows from our constitution for the protection of all whose liberty may be restrained under unlawful authority. The common law origin of the writ is recognized in *Wright* v. *The State* (1854), 5 Ind. 290, 294, as follows:

" '. . . Its great object is the liberation of those who may be imprisoned without just cause, and it has been so favorably regarded in this country, that the provisions of the *English* act, 31 *Charles* 2, chap. 2, have been substantially adopted by the several states. We have even gone further, and by the 27th section of the bill of rights in our constitution provided, that "the privilege of the writ of *habeas corpus* shall not be suspended, except in

case of rebellion or invasion; and then only if the public safety demand it".'

Although the Legislature has made and provided reasonable regulation for its use (§§3-1901 to 3-1925, Burns' 1946 Replacement), the writ is not a statutory remedy in a strict sense of the term, but rather a remedy recognized and continued by the Constitution." *State ex rel. Allen* v. *Fayette Circuit Court* (1948), 226 Ind. 432, 434, 435, 81 N. E. 2d 683, 684.

"The right of a writ of habeas corpus is a part of the law of the land . . ." *State ex rel. Eggers* v. *Branaman* (1932), 204 Ind. 238, 247, 183 N. E. 653. This right has been a part of the law of this jurisdiction since the Ordinance of 1787.[2] Unfortunately many of the cases have not clearly recognized that the substantive right recognized and continued by the organic law of this state, is a common law right made a constitutional right, and thus beyond the power of the Legislature to impair.[3] As was said

---

[2] "The inhabitants of the said territory shall always be entitled to the benefit of the writ of habeas corpus, and of the trial by jury . . . " Article 2, Ordinance of Congress 1787.

" . . . and the privilege of the writ of *habeas corpus* shall not be suspended, unless, in case of rebellion or invasion, the public safety may require it." Article 1, §14, 1816 Constitution of Indiana.

"The privilege of the writ of habeas corpus shall not be suspended, except in case of rebellion or invasion; and then, only if the public safety demand it." Article 1, §27, Bill of Rights, Constitution of Indiana.

[3] "It [the Federal Constitution] assumes the existence of the privilege, and provides against its infringement, even by the highest power in the state." Hurd, *Habeas Corpus* (2d Ed.) p. 106.

"It was brought to America by the colonists, and claimed as among the immemorial rights descended to them from their ancestors." *Ex parte Yerger* (1869), 8 Wall. 85, 19 L. Ed. 332, 336.

See also 25 Am. Jur. 145, §3.

by the Court of Appeals of New York in an opinion by Allen, J., "This writ cannot be abrogated, or its efficiency curtailed, by legislative action. Cases within the relief afforded by it at common law cannot, until the people voluntarily surrender the right to this, the greatest of all writs, by an amendment of the organic law, be placed beyond its reach and remedial action. . . .

"The remedy against illegal imprisonment afforded by this writ, as it was known and used at common law, is placed beyond the pale of legislative discretion, except that it may be suspended when public safety requires, in either of the two emergencies named in the Constitution." *People ex rel. Tweed* v *Liscomb* (1875), 60 N. Y. 559, 566, 567, 19 Am. Rep. 211. The statement in *State ex rel. Barnes* v. *Howard* (1946), 224 Ind. 107, 109, 65 N. E. 2d 55, that *"Habeas corpus is a statutory proceeding in the State of Indiana,"* is specifically overruled. If it be purely statutory, the legislature could then abolish the right to the writ. The legislature could enlarge the right, but the Constitution prohibits any impairment of the right.[4]

It is appellant's contention here that the judgment was void for the reason the trial court failed to pronounce a sentence of imprisonment against appellant for a specific term on the forgery charge as prescribed by §9-2208, Burns' 1942 Replacement. In determining this question we are not limited to the judgment as it appears in the commitment set forth as an exhibit to the complaint, and properly construed, Clause 2 of §3-1918, Burns' 1946 Replacement [Acts 1881 (Spec. Sess.), ch. 38, §790, p. 240], which prohibits an inquiry into the legality of any judgment or process issued on any final judgment of a court of

---

[4] For a comprehensive discussion of the common law on habeas corpus see 3 Hill (N. Y.) 647 *et seq.*

competent jurisdiction, does not and cannot constitutionally prohibit an inquiry into the jurisdiction of the court rendering the sentence as determined by the intrinsic record of that court, and the process issued pursuant thereto.[5]

In 1854 this court in construing a similar provision of 2 R. S. 1852, held, "This question of jurisdiction the judge had a right to inquire into on the hearing upon *habeas corpus*, both upon general principles of law, and under our statute. The statute is (2 R. S., p. 195, s. 725) that the judge, on such hearing, when the prisoner is held 'upon any process issued on any final judgment of a Court of competent jurisdiction,' shall not discharge, &c., plainly implying that the question of jurisdiction is open to inquiry." *Miller* v. *Snyder* (1854), 6 Ind. 1, 3. This same construction was given this provision in *Smith* v. *Clausmeier* (1893), 136 Ind. 105, 113, 114, 35 N. E. 904, where the court, in discussing the right and duty of the court in habeas corpus proceedings to determine the jurisdiction of the court whose orders or judgments are attacked, said:

"In relation to the statutory provision (R. S. 1881, section 1119) prohibiting any court or judge from inquiring into the legality of any judgment or process whereby the party is in custody, or from discharging him when the term of commitment has not expired, in certain named cases, one being when he is held 'upon any process issued on any final judgment of a court of competent jurisdiction,' it has been well said by Mr.

---

[5] "No court or judge shall inquire into the legality of any judgment or process whereby the party is in custody, or discharge him when the term of commitment has not expired, in either of the cases following:

". . . .

"Second. Upon any process issued on any final judgment of a court of competent jurisdiction." Section 3-1918, Burns' 1946 Replacement.

Church, in his work on Habeas Corpus (2d ed.), section 81: 'We apprehend that the true construction of such a statute leaves the question of jurisdiction always open. To bar the applicant from a discharge, by means of *habeas corpus,* the court in which the judgment was rendered, or from which the process was issued, must have had jurisdiction to render such judgment. The tribunal must be competent to render the judgment under some circumstances. The prohibition forbidding the inquiry, by a court or judge, into the legality of any previous judgment or process, does not, and can not without nullifying, to some extent, the general principles governing the issuance of the writ of *habeas corpus,* take from the court or judge the power, or relieve him from the duty of determining whether the judgment or process emanated from a court of competent jurisdiction; and whether the court rendering the judgment, or issuing the process, had the legal and constitutional power to render such judgment or send forth such process. It simply prohibits the review of a decision of "a court of competent jurisdiction." * * * Where it appears that the relator is detained under the process, or under the final judgment of a court of competent jurisdiction, it is the duty of the court to remand him, unless it is shown that the process issued, or that the judgment was rendered without jurisdiction; and this the relator may always show, notwithstanding the statutory prohibition.' "[6]

"A writ of *habeas corpus* raises the question of the jurisdiction of the court over the persons and over the subject-matter, and also his jurisdiction to enter the particular judgment which he does enter." *Kabanya* v. *Fogarty* (1923), 193 Ind. 297, 301;

[6] See 25 Am. Jur. 187, §56 for further discussion on constitutional right to inquire into jurisdiction of the court.

139 N. E. 449, 450.[7] In view of the many confusing statements about the nature and extent of jurisdiction, we feel the reasoning of Mr. Justice Field in *Re Bonner* (1894), 151 U. S. 242, 256, 257, 14 S. Ct. 323, 38 L. Ed. 149, 151, is particularly pertinent. He wrote, "There has been a great deal said and written, in many cases with embarrassing looseness of expression, as to the jurisdiction of the courts in criminal cases. From a somewhat extended examination of the authorities we will venture to state some rule applicable to all of them, by which the jurisdiction as to any particular judgment of the court in such cases may be determined. It is plain that such court has jurisdiction to render a particular judgment only when the offense charged is within the class of offenses placed by the law under its jurisdiction; and when, in taking custody of the accused, and in its modes of procedure to the determination of the question of his guilt or innocence, and in rendering judgment, the court keeps within the limitations prescribed by the law, customary or statutory. When the court goes out of these limitations its action, to the extent of such excess, is void. Proceeding within these limitations, its action may be erroneous, but not void."[8]

---

[7] Lack of jurisdiction to render particular judgment makes it subject to attack by habeas corpus. *Miller* v. *Allen* (1858), 11 Ind. 389.

[8] "Jurisdiction in a particular case is not only the power of the court to hear and determine but also the power to render the particular judgment entered, and every act of the court beyond its jurisdiction is void. (*Ex parte Reed*, 100 U. S. 13; *Chicago Title and Trust Co.* v. *Brown*, 183 Ill. 42.) The jurisdiction of a court or judge to render a judgment is always a proper subject of inquiry on *habeas corpus,* and is, in fact, the primary, and generally the only, subject open to inquiry." *People* v. *Siman* (1918), 284 Ill. 28, 32, 119 N. E. 940.

"The Modern Rule is that even where a court has jurisdiction of the offense charged and of the person of the accused,

The proceedings for the writ of habeas corpus in this state where the jurisdiction of the court in a criminal prosecution is involved do not put in issue matters dehors the record. *Dinkla* v. *Miles* (1934), 206 Ind. 124, 188 N. E. 577, *supra.*[9] The record is the court's intrinsic record, and when process is questioned it is the process issued pursuant to such intrinsic record. The truth of the record cannot be impeached on habeas corpus. "If the process is valid on its face, it will be deemed *prima facie* legal, and the prisoner must assume the burthen of impeaching its validity by showing a want of jurisdiction. Error, irregularity, or want of form, is no objection; nor is any defect which may be amended or remedied by the court from which it issues. If there was no legal power to render the judgment or decree, or issue the process, there was no competent court, and consequently no judgment or process. All is *coram non judice* and

it may so far transcend its powers in assessing the penalty for the offense, by imposing a punishment of a character different from that prescribed by law, or otherwise, that the sentence will be void. . . ." Vol. 15, Encyclopedia of Law (2d Ed.), p. 170.

"It matters not what the general powers and jurisdiction of a court may be; if it act without authority in the particular case, its judgments and orders are mere nullities, not voidable, but simply void, protecting no one acting under them, and constituting no hindrance to the prosecution of any right." *People ex rel. Tweed* v. *Liscomb* (1875), 60 N. Y. 559, 568; 19 Am. Rep. 211, *supra.*

See also 25 Am. Jur. 185, §55, on requisites of jurisdiction.

[9] The present federal rule is that "Questions of fundamental justice protected by the Due Process Clause may be raised, to use lawyers' language, dehors the record." *Carter* v. *Illinois* (1946), 329 U. S. 173, 175, 67 S. Ct. 216, 218, 91 L. Ed. 172, 175. The writ of error coram nobis is available in Indiana to present an issue as to a judgment being void for matters dehors the record.

void." *People ex rel. Tweed* v. *Liscomb* (1875), 60 N. Y. 559, 571, 19 Am. Rep. 211, *supra.*

The complaint by Witte did put in issue the jurisdiction of the trial court to render the judgment it did and the validity of the commitment for life imprisonment.

A finding of guilt is unnecessary where there is a plea of guilty. Ewbank's Indiana Criminal Law (2d Ed.), p. 242, §375. "Upon a plea of guilty, or actual confession in open court, the court has nothing to do but fix the amount of punishment and render judgment or sentence accordingly. There is nothing for the court to find. The prisoner, by his confession, has made a finding unnecessary." *Griffith* v. *State* (1871), 36 Ind. 406, 408.

A plea of guilty, as charged, to an indictment or affidavit charging previous convictions admits not only the crime charged for which the accused is being prosecuted, *Meyers* v. *State* (1901), 156 Ind. 388, 59 N. E. 1052, but also the prior convictions. *People* v. *Wilson* (1947), 396 Ill. 191, 71 N. E. 2d 8; *U. S. ex rel. Derencz* v. *Martin* (1930), 36 F. 2d 944; *Jenness* v. *State* (1949), 144 Me. 40, 64 A. 2d 184; 24 C. J. S. 1158, §1964. After a plea of guilty, no finding of guilt is necessary on the new offense, nor under such circumstances is a finding of previous convictions necessary under the habitual criminal statute.

The trial court failed to enter a sentence of imprisonment for forgery before proceeding to sentence appellant to imprisonment for life, but in our opinion this does not make the judgment void. The record in this appeal presents an issue somewhat similar to the issue decided in *Goodman* v. *Kunkle* (1934), 72 F. 2d 334. Goodman had been charged in the Superior Court of St. Joseph County, Indiana, with burglary, larceny and being an habitual criminal. The

jury returned the following verdict: " 'We, the Jury, find the defendant, John P. Goodman, guilty of burglary as charged in count one of the indictment, and find his age to be 39 years, and that the defendant is an habitual criminal.' " The judgment of the trial court on the verdict was "That the defendant 'be and he hereby is sentenced to imprisonment in the Indiana State Prison for life and that he be and he hereby is disfranchised from holding any office of trust or profit for a period of twenty-five (25) years.' " The Seventh Circuit Court of Appeals construed §§9-2207 and 9-2208, Burns' 1942 Replacement, and after reviewing the Indiana authorities, held the judgment was not void and said, in an opinion by Judge Alschuler, that Goodman "was in no wise harmed by the failure of the court to impose, additionally to the life sentence, the statutory sentence specified for the particular crime."

Nor is the appellant Witte in any position to complain there was a want of jurisdiction because he did not receive a sentence of imprisonment for forgery of from two to fourteen years as prescribed by §10-2102, Burns' 1942 Replacement, since the maximum sentence for life was required in any event under the habitual criminal act. The failure to impose the sentence for forgery was an irregularity, but it did not deprive the trial court of jurisdiction to impose the sentence for life, and the judgment is not void and subject to a collateral attack by habeas corpus.

It should be noted that we are not holding the trial court did not commit reversible error if the defect in the judgment had been presented on appeal from a ruling of the trial court overruling a proper motion to modify the judgment to conform to the statute. See Ewbank's Indiana Criminal Law (2d Ed.) §731, p. 554.

Judgment affirmed.

Gilkison, C. J., dissenting.

## DISSENTING OPINION

GILKISON, C. J.—I dissent from the majority opinion, for reasons as follows:

I do not agree with the statement in the opinion concerning habeas corpus thus:

"Although the legislature has made and provided reasonable regulation for its use (§§3-1901 to 3-1925, Burns' 1946 Replacement) . . . ."

I think the so-called regulation made by clause "second" §3-1918, Burns' 1946 Replacement is unreasonable and unconstitutional.[1] It is as follows:

"No court or judge shall inquire into the legality of any judgment or process whereby the party is in custody, or discharge him when the term of commitment has not expired, in either of the cases following:

". . . .

---

[1] A recent well considered article concerning this anomalous situation has this to say.

"The writ of habeas corpus has been called the 'Great Writ' and the 'Freedom Writ,' but insofar as its function in Indiana as a post-conviction remedy is concerned, it might well be called the 'Useless Writ.' Despite the fact that it is protected from suspension by the state constitution, it has become encased in a statutory and judicial straightjacket which has made it practically unavailable as a vehicle for safeguarding the constitutional rights of prisoners. The writ can be brought only in the county in which the prisoner is incarcerated and only in the court in which he was convicted. Even if the prisoner has the 'good fortune' to be imprisoned in the county in which he was convicted, habeas corpus is of little practical advantage. Indiana still adheres, in practice as well as theory, to the hoary rule that habeas corpus may be used only to inquire into jurisdictional defects. The court has refused to resort to the method by which the scope of federal habeas corpus was expanded— that a court loses jurisdiction and can render no valid judgment when constitutional rights are denied." 26 Indiana Law Journal 529, 530.

"Second. Upon any process issued on any final judgment of a court of competent jurisdiction.

". . . ."

Clause second thereof is in direct contravention of Art. 1, §27 of the constitution of Indiana, providing as follows:

"The privilege of the writ of habeas corpus shall not be suspended, except in case of rebellion or invasion; and then, only if the public safety demand it."

The statute noted is clearly an attempt by the Legislature to limit and to suspend permanently the privilege of the writ of habeas corpus in many proper cases in open conflict with the constitutional provision noted. In such a situation the statute must yield to the superior command of the constitution. (See Appendix 3 Hills Reports, N. Y. 635, 665 note.)

Since the constitutional provision on habeas corpus transcends the statute noted, the state must provide a forum in which appellant and others who may be similarly situated can file their habeas corpus proceedings and pursue the same to final judgment. That is the meaning of the constitutional provision for habeas corpus. It is also commanded by Art. 1, §12 of the Indiana Constitution as follows:

"All courts shall be open; and every man, for injury done to him in his person . . . shall have remedy by due course of law. Justice shall be administered . . . completely, and without denial; . . . ."

This court has heretofore well said that this section of the constitution "is fully satisfied by a trial in a court of competent jurisdiction in which the right to a jury, in a proper case, as guaranteed by the Constitu-

tion, is afforded." *Lake Erie, etc. R. Co.* v *Watkins* (1902), 157 Ind. 600, 608, 62 N. E. 443. I think it may properly be said that this section is not satisfied unless an opportunity is given a party to have his habeas corpus action tried completely and without denial in a court of competent jurisdiction as guaranteed by this section of the state constitution. The statute, §3-1918, Burns' 1946 Replacement boldly denies appellant a forum in which to have a trial for the alleged "injury done to him in his person." *Greencastle Township et al.* v. *Black* (1854), 5 Ind. 557, 564. See authorities in *State ex rel. Cline et al.* v. *Schricker, Governor et al.* (1949), 228 Ind. 41, 70, 89 N. E. 2d 547; *Ellingham* v. *Dye* (1912), 178 Ind. 336, 342, 99 N. E. 1; *Ex Parte Milligan* (1866), 4 Wall. 2, 18 L. Ed. 281, 295.

Prior to the enactment of this statute this court consistently adhered to the rule:

> " 'that where a limited tribunal takes upon itself to exercise a jurisdiction which does not belong to it, its decision amounts to nothing, and does not create a necessity for an appeal.'
>
> "This question of jurisdiction the judge had a right to inquire into on the hearing upon *habeas corpus,* both upon general principles of law, and under our statute." *Miller* v. *Snyder* (1854), 6 Ind. 1, 3.

This rule was followed by this court even as against courts of general jurisdiction long after the enactment of the questioned statute. In *Smith* v. *Clausmeier* (1893), 136 Ind. 105, 109, 35 N. E. 904, this court said:

> "Even in case of a court of superior and general jurisdiction, and where the record shows a judgment and sentence entered up against a defendant, a writ of *habeas corpus* will be awarded and the defendant discharged, *on a plea to the return,* with proof, showing that no such judgment was entered

upon the order-book until after adjournment of court. *Passwater* v. *Edwards* (1873), 44 Ind. 343, 345." (My italics).

Reiterating this position in *State, ex rel. Eggers* v. *Branaman, Judge* (1932), 204 Ind. 238, 247, 183 N. E. 653, where relatrix sought to mandate the correction of a judgment record of a circuit court preliminary to attacking it by habeas corpus, speaking by Treanor, C. J. we said:

"... A defendant, however, is under no duty to take advantage of any particular legal remedy which may happen to be available at the risk of being precluded from attacking in a habeas corpus proceeding an alleged void judgment. The remedy of habeas corpus is more fundamental and far-reaching as against void judgments than the remedy of appeal. The right to a writ of habeas corpus is a part of the law of the land and if the facts justify relief thereunder a party is entitled to this relief even though the same result might have been achieved by the more common remedy of appeal."

Reliance upon this statute by our court to limit and suspend a defendant's right to habeas corpus seems to have begun with *McLaughlin* v. *Etchison* (1891), 127 Ind. 474, 476, 27 N. E. 152. It was thereafter relied upon rather frequently, as evidenced, among others, by the cases following: *Webber* v. *Harding* (1900), 155 Ind. 408, 413, 58 N. E. 533; *Stephenson* v. *Daly, Warden* (1927), 200 Ind. 196, 200, 158 N. E. 289, and cases cited.

But in the latter case I think the correct statement of the law of habeas corpus is found in the concurring opinion of Martin, J. at page 203, thus:

"... but, where it is alleged that there are radical jurisdictional defects, sufficient to render

the judgment void and subject to collateral attack, and that such lack of jurisdiction can be determined from the record (the record proper is the petition and the return), *habeas corpus* is the proper remedy. Want of jurisdiction over the person or subject-matter is always ground for such relief. If the court has acted without such jurisdiction, the judgment is absolutely void, and one who is imprisoned under and by virtue of such a void judgment may be discharged from custody on *habeas corpus*. 29 C. J. 30, note 16; 12 R. C. L. 1196; *Miller* v. *Snider* (1854), 6 Ind. 1; *People* v. *Simon* (1918), 284 Ill. 28, 119 N. E. 940. As to person, see *In re Mayfield* (1890), 141 U. S. 107, 35 L. Ed. 635; *In re Reese* (1901), 107 Fed. 942; *Ex parte Reed* (1879), 100 U. S. 13, 25 L. Ed. 538; *Eureka Bank Cases* (1912), 35 Nev. 80, 126 Pac. 655. As to subject-matter, see *Hans Nielson, Petitioner* (1889), 131 U. S. 176, 33 L. Ed. 118; *Ex parte Lange* (1874), 18 Wall. 163; *Ex parte Yarbrough* (1884), 110 U. S. 651, 28 L. Ed. 274; *Ex parte Justus* (1909), 3 Okla. Crim. 111, 104 Pac. 933, 25 L. R. A. (N. S.) 483.

"Statutes such as §1200 Burns 1926, providing substantially that courts shall not, in *habeas corpus* actions, inquire into the legality of any final judgment 'of a court of competent jurisdiction' have uniformly been held not to preclude inquiry into the question as to whether the court had jurisdiction. 29 C. J. 55, note 55.

"A court of 'competent jurisdiction' is not merely a court that is 'capable' of acquiring jurisdiction, but it is a court which has jurisdiction of the person and of the subject-matter. *Babbitt* v. *Doe* (1853), 4 Ind. 355; *In re Norton* (1902), 64 Kans. 842, 849; *People, ex rel.,* v. *Liscomb* (1875), 3 Hun. (N. Y.) 760, 60 N. Y. 559.

"It does not here appear that the Hamilton Circuit Court considered or determined the question which is now raised as to its jurisdiction, but it does not matter whether or not that court decided that it had authority to try and determine the case, because, if no such power existed in the court, its decision would not give it the power. Its judgment

may be questioned anywhere for want of jurisdiction. Bailey, Habeas Corpus 80."

In *Goodman* v. *Daly, Warden* (1929), 201 Ind. 332, 336, 165 N. E. 906, our court took refuge behind the questioned statute and denied habeas corpus because thereof; and on the theory that the question presented should have been determined by appeal. I think this decision is completely overruled in substance by the opinions of Treanor, C. J. and of Martin, J. quoted from above.

A weakness of the majority opinion is that after splendidly tracing habeas corpus from its inception in the English law, giving it merited praise and asserting its present potency in Indiana, it then fails to coordinate its action with that which it asserts to be the law. For it agrees that the statute, §3-1918, Burns' 1946 Replacement, *supra* is a reasonable regulation for the use of habeas corpus, after a final judgment has been rendered by a court of general jurisdiction, though, as in the instant case, its intrinsic record shows it acted without jurisdiction. This, to say the least, does not harmonize with the correct statement in the opinion that habeas corpus "is a common law right made a constitutional right, and thus beyond the power of the Legislature to impair."

I think clause "Second" of §3-1918, Burns' 1946 Replacement is clearly unconstitutional and it should be so declared in this case. Of course, when this section falls all the cases resting thereon will go down with it.

Art. 1, §37, Indiana Constitution, provides:

"There shall be neither slavery, nor involuntary servitude, within the State, *otherwise than for the punishment of crimes, whereof the party shall have been duly convicted. . . . .*" (My italics).

The Thirteenth Amendment to the United States Constitution is similar in all respects to Art. 1, §37 of the Indiana Constitution.

The statute upon which the affidavit in this case is founded provides as follows:

"Every person who, after having been twice convicted, sentenced and imprisoned in some penal institution for felony, whether committed heretofore or hereafter, and whether committed in this state or elsewhere within the limits of the United States of America, shall be convicted in any circuit or criminal court in this state for a felony hereafter committed, shall be deemed and taken to be an habitual criminal, and he or she shall be sentenced to imprisonment in the state prison for and during his or her life." §9-2207, Burns' 1942 Replacement.

The meaning of the term "Habitual Criminal" and the Indiana Habitual Criminal statute are explained in *Goodman* v. *Kunkle, Warden* (1934), 72 F. 2d 334, 336, thus:

"Habitual criminality is a state, not a crime . . . . Habitual criminal statutes, such as that of Indiana, do not create or define a new or independent crime, but they prescribe circumstances wherein one found guilty of a specific crime may be more severely penalized because of his previous criminalities as they are alleged and found. . . ."

See also *Rogers* v. *State* (1948), 226 Ind. 539, 545, 82 N. E. 2d 89; *Barr* v. *State* (1933), 205 Ind. 481, 485, 187 N. E. 259. There are many authorities to the same effect in Indiana and elsewhere.

Since being a "habitual criminal" *is not a crime* under the Indiana statute but is only a state or status, what effect can the possession of that status by appellant—or any other person—have upon his—or their—immunity from "involuntary servitude" under Art. 1,

§37 of the Indiana Constitution heretofore set forth? Since the protection and security of the natural rights of all persons—particularly to "life, liberty and the pursuit of happiness"—are the principal elements upon which the entire Bill of Rights of our state constitution is based, I do not believe that appellant's, or any other person's, right to liberty can be taken away and he or they be placed in involuntary servitude for life because of a status. If we heed the constitution of the state this could be done only for the commission of a heinous crime. The only crime charged against appellant was that of forgery carrying a penalty of imprisonment for not less than two years nor more than fourteen years. §10-2102, Burns' 1942 Replacement. Since the Indiana Habitual Criminal statute, §9-2207, Burns' 1942 Replacement clearly provides for the imprisonment of a defendant for life for the status of being an habitual criminal it is in violation of Art. 1, §37 of the Indiana Constitution and therefore void. I am aware that this statute has been held as not contravening some other sections of the state constitution but so far our court has not heretofore passed upon its conflict with Art. 1, §37.

Notwithstanding contrary statements by this court, which were followed by the court of appeals in *Goodman* v. *Kunkle, Warden* (1934), 72 F. 2d 334, 337, *supra,* out of deference to what it called "the rule of Indiana," the Indiana Habitual Criminal statute heretofore quoted, does not provide a more severe penalty upon the conviction for the third felony charged. (If it did I do not think it could provide a greater penalty than the maximum provided by law for the felony charged). Section 9-2208, Burns' 1942 Replacement is Section two of the same Act as §9-2207, both comprise Chapter 82, Acts 1907, page 109. They must be considered together in

order to get the legislative intent. The latter section is as follows:

"To authorize a sentence of imprisonment for life under this act, the indictment or affidavit shall allege that the defendant has been previously twice convicted, sentenced and imprisoned in some penal institution, for felonies, describing each separately. If the trial jury, in their verdict, find these facts to be true, and convict such defendant of the third felony, the trial court, after passing sentence of imprisonment for a specific term, as prescribed by the statute, shall proceed to sentence the defendant to imprisonment for his or her life." §9-2208, Burns' 1942 Replacement.

It must be noted that the life sentence provided for *is in addition to* the term sentence provided for the third felony with which the defendant is charged. It is not a part of the sentence for the commission of the third felony. Punishment for the third felony is specifically provided for by the law and sentence thereon must be passed by the court "for a specific term as prescribed by statute," before the court is "authorized" to give "a sentence for life under this act." The life sentence provided for is thus a sentence for the status Habitual Criminal—the defendant having already received the full sentence provided by law for the third felony.

It would seem ridiculous to say that this statute requires the giving of two sentences as punishment for the same felony. It is impossible for me to believe that any court ever intended to so hold. Of course, such a holding would run afoul Section 1 of the Fourteenth Amendment of the United States Constitution and Sections 16 and 18 of the Bill of Rights Indiana Constitution.

If we (erroneously I think) consider the Indiana Habitual Criminal statute as constitutional, let us con-

sider the validity of the courts procedure in the instant case, under that statute.

Of course, in Indiana, all crimes are defined by statute §9-2401, Burns' 1942 Replacement. Where there is no statute defining the crime, there is no crime. See authorities cited in *Gingerich* v. *State* (1948), 226 Ind. 678, 689, 83 N. E. 2d 47, 83 N. E. 2d 479.

". . . The language of a criminal statute can not be extended beyond its reasonable meaning, and wherever the court entertains a reasonable doubt as to the meaning, the doubt must be resolved in favor of the accused. The court must expound what it finds written, and can not import additional meaning without sufficient indication thereof in the words of the statute with such aids thereto as the established rules of law authorize. In the absence of any other apparent purpose of the legislature, the statute should be read as written, and all parts and terms therein should be considered together, with reference to their connections and to the subject to which the statute relates. . . ." *Cook* v. *State* (1901), 26 Ind. App. 278, 281, 59 N. E. 489. *VanArsdall* v. *Indiana Bell Tel. Co.* (1926), 84 Ind. App. 257, 259 and cases cited, 151 N. E. 19.

". . . it is a fundamental rule in the construction of statutes that penal statutes must be construed strictly. . . . Under the rule of strict construction, such statutes will not be enlarged by implication or intendment beyond the fair meaning of the language used, . . . ." 59 C. J. §660, p. 1113 to 1116; *State* v. *Cleveland, etc., R. Co.* (1901), 157 Ind. 288, 290 and citations, 61 N. E. 669.

". . . But statutes which take away, change, or diminish fundamental rights, statutory remedies, for rights unknown to the common law, and statutes which provide new and extraordinary remedies, must be construed strictly, both as to the cases embraced within their terms *and as to the methods* to be pursued." (My italics). 59 C. J. Statutes, §669, p. 1129, 1130. See also *State* v. *Pence* (1909), 173 Ind. 99, 103, 89 N. E. 488, *supra.*

The above are some of the rules by which the Indiana Habitual Criminal statute must be construed.

It has been held by this court frequently, that all statutes relating to criminal proceedings must be strictly construed in favor of a defendant and against the state. *Kistler* v. *State* (1921), 190 Ind. 149, 155, 129 N. E. 625; *Ward* v. *State* (1919), 188 Ind. 606, 608, 125 N. E. 397; *State* v. *Kuhn* (1900), 154 Ind. 450, 453, 57 N. E. 106; *State* v. *Pence* (1909), 173 Ind. 99, 103, 104 and citations, *supra;* 50 Am. Jur. Statutes, §§408, 409, pp. 432, 433, 434.

The statute defining the state or status of "Habitual Criminal" has been heretofore quoted. But Section 2 of the Act, §9-2208, Burns' 1942 Replacement likewise heretofore quoted, is of equal force and effect with Section 1 thereof. Section two provides the method by which alone, courts may carry into effect the right or duty of sentencing defendants to life imprisonment under the act. It is a legislative implementation of Section one. The Legislature saw fit to make this implementation very specific. It was entirely within its rights in doing so. The right of every person to liberty, in this state and nation, cannot be taken away permanently or even temporarily except in the specific manner provided by the law authorizing it. The statute under which alone the trial court could render its judgment sentencing appellant to prison for life—specifically provides:

> "To authorize a sentence of imprisonment for life under this act, . . . ."

It then specifies what shall be done by the court. This court has heretofore definitely determined that the word "authority" when used in legislation to confer power, means "control over, *jurisdiction,* absolute power." (My italics). *State ex rel.* v. *Home Brewing Co.* (1914),

182 Ind. 75, 96, 97, 105 N. E. 909. See also 7 C. J. S. p. 1290. *Lee* v. *State* (1904), 143 Ala. 93, 95, 39 So. 366. Black's Law Dictionary, 3rd Ed. p. 171. The word "authorize" means "to empower, to give a right or authority to act. To clothe with authority, warrant or legal power" see authorities Black's Law Dictionary, *supra,* p. 172. 4 Words and Phrases p. 829 et seq.

Among the things the trial court is required by the statute to do, before it has jurisdiction to give the life sentence to a defendant, as an habitual criminal, is this:

> ". . . *the trial court, after passing sentence of imprisonment for a specific term, as prescribed by the statute,* shall proceed to sentence the defendant to imprisonment for his or her life." (My italics). §9-2208, Burns' 1942 Replacement.

In the instant case the trial court completely ignored the specific jurisdictional requirements of the statute. It wholly failed to pass "sentence for a specific term as prescribed by the statute." This it must do before it has jurisdiction or authority to "proceed to sentence the defendant to imprisonment for life." The word "proceed" as used in the statute last quoted has a very definite meaning. It means "to advance . . . from a given point or stage." (Definition 1, Webster's New International Dictionary. See also New Standard Dictionary). In the instant case the given point or stage from which the trial court has jurisdiction to advance, is from the point or stage of "passing sentence of imprisonment for a specific term, as prescribed by the statute." Since the record of the trial court before us conclusively shows that the trial court never arrived at that point, it did not and could not proceed therefrom. On the contrary it ignored or by-passed this essential jurisdictional requirement.

This it could not lawfully do. In doing this unlawful act the trial court denied appellant "due course of law" under Art. 1, §12 of the state constitution and "due process of law" under Section 1 of the Fourteenth Amendment of the Constitution of the United States.

It cannot be contended that it makes no difference to the defendant that he was not sentenced for the specific term provided by statute for forgery since his sentence for life would embrace the specific term sentence. On the contrary it makes a vast difference to the defendant and an even greater difference to the majesty of the law, for it takes away defendant's liberty for life without giving him due process of law as provided by our constitutions and by the statute under authority of which the trial court and this court must act in this matter.

> "Statutes facilitating the enforcement of such rights would be proper, but those limiting such rights as to the time of asserting them or otherwise are void." *State Ex Rel. McManamon et al.* v. *Blackford Circuit Court et al.* (1950), 229 Ind. 3, 23, 95 N. E. 2d 556.

What we do to this defendant in this matter is a precedent for action against any, or all of the citizens of the state when and if government may desire absolute control. If we may ignore or by-pass one constitutional protection to personal liberty, we may, with equal ease and abandon, ignore them all. It seems to me the majority opinion in this case may be cited as authority for so doing.

The opinion is largely based upon *Goodman* v. *Kunkle, Warden* (1934), 72 F. 2d 334, 337, *supra*. But this opinion of the Circuit Court of Appeals is confessedly an effort of that court to follow the Indiana decisions based upon the Indiana Statute (§3-1918,

Burns' 1946 Replacement, *supra*) which I think clearly attempts to limit and largely suspends the privilege of the writ of habeas corpus. Along this line the court said:

> "We can see no reason why the federal court should not follow the rule of the Indiana courts as to the right of resort to habeas corpus in collateral attack upon a judgment where the court pronouncing it had jurisdiction over person and subject-matter."

I appreciate the deference shown to the Indiana decisions by the Court of Appeals. But it is these Indiana decisions, or some of them, that are out of line and that must be corrected if we give force and effect to the habeas corpus provision of the Indiana Constitution, Art 1, §27 and of the United States Constitution, Art. 1, Cl. 2, §9.

It is true our state courts should correct their own errors, but when there is a plethora of confusion extant it is to be expected that the courts may have their share. On the propositions mentioned I am unable to agree with my brother judges in this case. It is to be hoped that a writ of certiorari may be taken in the case that the vital issues presented may be authoritatively determined.

I think the judgment should be reversed with instructions to overrule the motion to quash the writ of habeas corpus.

NOTE.—Reported in 102 N. E. 2d 630.